

November 30, 2022

**V**IA **E-F**ILING
The Honorable Gregory B. Williams
J. Caleb Boggs Federal Building
844 N. King Street
Room 6124, Unit 26
Wilmington, DE 19801-3556

      Re:    **International Business Machines Corporation v. Zynga Inc. et al.**
              **C.A. No. 22-cv-590-GBW**

Dear Judge Williams,

      Zynga submits the following response to IBM's November 29, 2022 letter. [D.I. 76]. The parties' present dispute centers on the meaning of Section 9(b) of the Scheduling Order. Section 9(b) requires Defendants to produce documents "***sufficient to show how the accused product(s) work(s)***, including but not limited to non-publicly available operation manuals, product literature, schematics, and specifications." [D.I. 39], § 9(b) (emphasis added). The parties disagree on what documents Zynga must produce to satisfy Section 9(b).

**Zynga's Interpretation of Section 9(b)**

      Zynga understands Section 9(b) requires Zynga to produce documents "sufficient to show how the accused products work." This requirement dictates not only ***what type*** of documents are relevant (*i.e.*, documents that "show how the accused products work") but also ***how many*** such documents should be produced (*i.e.*, documents "sufficient to show" and not "all" documents). In line with this, Zynga produced—and continues to produce—source code for the representative games (accused products). Zynga acknowledges that Section 9(b) also references "including but not limited to non-publicly available operation manuals, product literature, schematics, and specifications," but this must be read in the context of—and reconciled with—the operative "sufficient to show language." Unlike IBM, Zynga does not understand the listed categories to create an additional requirement that such documents ***must*** be produced, rather these are types of documents that may fulfill the "sufficient to show" requirement. To understand otherwise creates tensions within the Scheduling Order. *Cf. Drone Technologies, Inc. v. Parrot S.A.*, 838 F.3d 1283, 1298-99 (Fed. Cir. 2016) (recognizing requirements to produce documents "sufficient to show" how a product works does not require production of all documents).

First, if there existed "operation manuals, product literature, schematics, and specifications" *each* of which showed completely how an accused product works, requiring a party to produce *all* of these would obligate the party to produce more than the required documents "sufficient to show." Second and on the other end of the spectrum, if there were no "operation manuals, product literature, schematics, and specifications" (or those documents did not show how a product worked), such a production would not suffice because it would not show "how the accused products work."

This is not a hypothetical. In this case—where software is the accused product—source code is the *only* document that completely and accurately details the operation of the accused products. By their very nature, *other* technical documents are less precise, less detailed, less accurate, and/or incomplete, where they exist. This is generally true for Zynga's other technical documents, which can vary greatly between games, or even between features of a game (to the extent a feature is even documented). In light of this, Zynga has repeatedly asked IBM why source code is not sufficient to show how the accused products work. IBM has not answered.

**IBM's Interpretation of Section 9(b)**

IBM appears to take issue with Zynga's source code production for at least two reasons: it claims (1) Zynga did not *produce* core technical documents and (2) that source code is not a technical *document*. [DI 76] at 2-3. IBM cites nothing supporting either position. By the terms of the Protective Order, making source code available for inspection is producing it. *See* [D.I. 60] ¶12(a)(i) (Any Source Code that is *produced* … shall be made available for *inspection* in electronic format … ." (emphasis added)). And the idea that source code is not a document—or a core technical document—is not consistent with Delaware law. *See Via Vadis Controlling GmbH v. Skype, Inc.*, No. CIV.A. 12-MC-193-RGA, 2013 WL 646236, at *1 (D. Del. Feb. 21, 2013) (referring to "source code and *other* core technical documents" (emphasis added)).

IBM also argues, for the first time since the parties' meet and confer efforts, that Delaware law "rejects" producing source code as core technical documents, citing *Princeton Digital Image Corp. v. Konami Digital Entertainment Inc.* This misstates both Delaware law and *Princeton Digital*. In that case, Konami produced source code to satisfy its core document production. 316 F.R.D. 89 (2006). Princeton Digital sought an order requiring Konami to produce additional technical documents. *Id.* at 90. Konami argued that Princeton Digital was not entitled to those additional technical documents because they were in the control of Konami's

non-U.S., non-party affiliate, and because such technical documents would be inferior to the source code itself. *See*, Ex. A (Konami's Aug. 1, 2016 Letter Brief, D.I. 149), at 3-4; *see also* Ex. B (Konami's Aug. 24, 2016 Letter Brief, D.I. 170) ("Plaintiff has no overwhelming need for Japanese documents…"). The Court denied the motion because Konami did not have control over its foreign affiliate. *Princeton Digital*, 316 F.R.D. at 95. In dicta, the court also rejected Konami's argument that Princeton Digital was not entitled to additional technical documents. *Id.* at 95 n.11. IBM quotes this language in its letter ("The Court is aware of no rule that states that if a defendant has produced source code, Plaintiff is ***not entitled*** to any other 'core technical documents.'" (emphasis added)). But this language should be read in the context of Konami's arguments to the court, namely that Princeton Digital was not entitled to additional documents ***ever*** because it had produced source code. That is not the posture of this dispute. Zynga has ***never*** argued that it was refusing to ever produce non-source code technical documents (in response to, *e.g.*, requests for production). Zynga has repeatedly said that it could not guarantee that such documents would be produced before December 15, 2022, not that Zynga refuses to produce such documents during the course of discovery.

By demanding non-source code documents ***in addition*** to source code, IBM seeks to accelerate the case schedule to require Zynga to substantially complete its document production before the ***August 10, 2023*** deadline. That is not proper. That IBM might prefer certain types of technical documents does not render Zynga's production deficient.

**Status of Source Code Production**

IBM devotes the balance of its letter complaining about the sufficiency of Zynga's source code productions. To be clear, this dispute did not arise because of the sufficiency of Zynga's source productions: IBM sent a meet and confer letter about the core technical document production ***before*** IBM reviewed any code. *Compare* Ex. Ex. C (Notice of Source Code Review for Nov. 10, 2022) *with* Ex. D (Meet and Confer Letter dated Nov. 9, 2022). That said, Zynga is committed to making relevant source code available for IBM to inspect and Zynga continues to supplement its initial source code production with source code IBM has identified as missing through a regular meet and confer process. The Court should allow that process to continue.

\* \* \*

For these reasons, Zynga respectfully requests the Court adopt Zynga's interpretation of Section 9(b) and deny IBM's request for relief.

Respectfully submitted,

/s/ Brian E. Farnan

Brian E. Farnan

cc: Counsel of Record (via E-Filing)