# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ZYNGA INC., and CHARTBOOST, INC., )<br>)<br>Defendants. ) | C.A. No. 22-590-GBW<br><br>**JURY TRIAL DEMANDED**<br><br>**PUBLIC VERSION** |

## LETTER TO THE HONORABLE GREGORY B. WILLIAMS
## FROM DAVID E. MOORE

OF COUNSEL:

John M. Desmarais
Karim Z. Oussayef
Lindsey E. Miller
Tamir Packin
Jordan N. Malz
Edward Geist
Raymond N. Habbaz
Benjamin Rodd
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: (212) 351-3400

Dated: November 29, 2022
10453079 / 00311.00032

Public Version Dated: December 6, 2022

David E. Moore (#3983)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Plaintiff International Business Machines Corporation*



**David E. Moore**
Partner
Attorney at Law
dmoore@potteranderson.com
302 984-6147 Direct Phone
302 658-1192 Firm Fax

November 29, 2022
Public Version Dated: December 6, 2022

**VIA ELECTRONIC FILING**

The Honorable Gregory B. Williams　　　　　　　　　　**PUBLIC VERSION**
U.S. District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 North King Street
Wilmington, DE 19801

    Re: *International Business Machines Corporation v. Zynga Inc., et al.*,
       C.A. No. 22-590-GBW

Dear Judge Williams:

  Plaintiff International Business Machines Corporation ("IBM") submits this discovery dispute letter for the December 2, 2022 discovery conference regarding Defendants' failure to comply with their November 3, 2022 disclosure obligations under the Scheduling Order. (D.I. 39 at § 9(b).)[1] Specifically, Defendants failed to produce—by the November 3 deadline and still as of today—the required "core technical documents related to the accused product(s)." (*Id*.) Defendants even have refused to produce the specifically-enumerated categories of technical documents for which the Scheduling Order ***expressly required*** production, "***including but not limited*** to non-publicly available operation manuals, product literature, schematics, and specifications." (*Id*.) IBM needs these technical documents to prepare its initial infringement contentions, which are currently due on December 15, 2022. (*Id*. at § 9(c).) Accordingly, IBM requests that the Court order Defendants to promptly produce all technical documents required by Section 9(b) of the Scheduling Order—including the specifically-enumerated categories of technical documents—and extend IBM's deadline to submit initial infringement contentions so IBM has a reasonable opportunity to review and incorporate these overdue documents.

**I. The Scheduling Order Required Defendants To Produce Core Technical Documents, "Including But Not Limited To . . . Operation Manuals, Product Literature, Schematics, And Specifications" By November 3, 2022**

  IBM brought this suit against Defendants Zynga Inc. and its subsidiary Chartboost, Inc. to redress Defendants' ongoing infringement of IBM patents concerning computer communications, data processing, and user sign-on processes. (D.I. 1; D.I. 27.) On September 6, 2022, the Court entered a stipulated Scheduling Order. (D.I. 39.) Pursuant to the Scheduling Order, IBM provided its preliminary identification of accused products on September 21, 2022. (D.I. 44; Ex. 1.) Among other things, IBM specifically identified 66 Zynga games as well as websites and interfaces that provide certain features and functionalities (e.g., "searching or purchasing products or services"; "selecting content, submitting information, and/or following links"; "signing in or creating a Zynga account"; "facilitates gameplay"; and/or "providing access to Chartboost, Inc.'s

---

[1] On November 14, 2022, the parties proposed an Amended Scheduling Order (D.I. 68), which re-numbered Section 9 of the Scheduling Order (D.I. 39) as Section 3.

The Honorable Gregory B. Williams                                                                                          Page 2

('Chartboost') services"). (Ex. 1 at 1-5.) To facilitate discovery, the parties provisionally agreed to treat 13 games as "representative" of Zynga's accused games. (Ex. 2.)

By November 3, 2022, Defendants were required to "produce core technical documents related to the accused product(s), sufficient to show how the accused product(s) work(s), ***including but not limited to non-publicly available operation manuals, product literature, schematics, and specifications***." (D.I. 39 at § 9(b) (emphasis added); *see also* Default Standard for Discovery, Including Discovery of ESI at § 4(b).) But rather than comply with the Scheduling Order and produce the above-identified technical documents, Defendants unilaterally chose instead to make source code available for review—for just an incomplete subset of accused products—and withhold the technical documents expressly required by the Scheduling Order.

## II. Defendants Failed To Produce The Core Technical Documents Required Under The Scheduling Order By November 3, 2022—And Still Have Not Done So As Of Today

Defendants failed to produce the required core technical documents by November 3, and still have not done so. Defendants did not produce *any* technical documents at all—***not even the four expressly-required categories***—for 11 of the 13 representative games, including (1) Empires & Puzzles: RPG Quest, (2) Golf Rival, (3) Merge Dragons!, (4) Zynga Poker, (5) CSR Racing 2, (6) Spades Plus, (7) FarmVille 2: Country Escape, (8) Game of Thrones Slots Casino, (9) Words With Friends 2, (10) High Heels!, and (11) Onnect. (Ex. 3.) For the two remaining representative games (Harry Potter: Puzzles & Spells and Wizard of Oz Slots) and the accused websites/interfaces, Defendants did not produce technical documents sufficient to show how the accused functionalities work, such as how Defendants process user transactions, determine which ads to show users, and enable users to sign in or create accounts through third parties. (*Id*. at 3-7.)

The parties exchanged substantial correspondence regarding Defendants' failure to comply with the Scheduling Order (Exs. 3-8) and held two meet and confers on November 15 and 21, respectively. Defendants do not dispute their failure to produce operation manuals, product literature, schematics, and specifications. Instead, Defendants assert, without authority, that the source code they made available for inspection purportedly satisfies Defendants' obligation to produce core technical documents and, thus, Defendants have no obligation at this time to produce "other" technical documents, including the four categories expressly required in Section 9(b) of the Scheduling Order. (Ex. 5 at 2.) Defendants even refuse to confirm whether or not they searched for core technical documents. (*Id*.) Notably, Defendants do not deny those documents exist and are in their possession, nor do they articulate any undue burden to produce them.

## III. Defendants Do Not Satisfy Their Scheduling Order Obligation To Produce Core Technical Documents Simply By Making Source Code Available For Inspection

As an initial matter, Defendants did not make source code available for five of the 13 representative games: (1) Empires & Puzzles: RPG Quest (latest release), (2) Golf Rival, (3) FarmVille 2: Country Escape; (4) Game of Thrones: Slots Casino; and (5) Words With Friends 2. As discussed above, Defendants did not produce core technical documents for these games either. Thus, Defendants clearly have not met their core technical document production obligation with respect to these five games—40% of the representative games.

As to the other products, simply offering source code for inspection does not comply with Defendants' obligation to produce core technical documents. Source code alone does not meet the words of Section 9(b) of the Scheduling Order, which expressly requires that Defendant "***produce***

core technical ***documents***," including four specifically-enumerated categories of documents—none of which are source code. (D.I. 39 at § 9(b).) Unsurprisingly, Delaware case law ***rejects*** the notion that source code relieves a defendant's obligation to produce core technical documents:

> ***The Court notes that it does not agree*** with [defendant]'s alternate position that the motion to compel should also be denied because [defendant] has already made the source code and games themselves available to Plaintiff, and so "[a]ny technical information from [defendant] would necessarily be inferior to the source code." . . .
>
> This Court's "Default Standard for Discovery, Including Discovery of Electronically Stored Information ('ESI')" states that a plaintiff is entitled to core technical documents "*including but not limited to* operation manuals, product literature, schematics, and specifications." Default Standard for Discovery, Including Discovery of Electronically Stored Information ("ESI"), at ¶ 4(b) (emphasis added). ***The Court is aware of no rule that states that if a defendant has produced source code, Plaintiff is not entitled to any other "core technical documents."***

*Princeton Digital Image Corp. v. Konami Digital Entertainment Inc.*, 316 F.R.D. 89, 95 n.11, C.A. No. 12-1461-LPS-CJB (D. Del. Aug. 31, 2016) (emphasis added).

Defendants' approach of requiring in-person code inspections while withholding their core technical documents improperly puts the cart before the horse and prejudices IBM. Core technical documents provide easily understood, human-readable descriptions of product architectures, features, and functionalities. By contrast, code comprises lengthy lists of commands—often amounting to millions of lines—that require many days of time-consuming and burdensome expert review. Here, IBM conducted a four-day inspection of Defendants' source code, which comprised over one million files of code, before raising this discovery dispute with the Court. (Exs. 9 & 10.) IBM cannot realistically, practically, or efficiently analyze Defendants' morass of code without having the core technical documents that explain the key features and functionalities on which IBM should focus its review, let alone do so by the December 15 deadline for IBM's initial infringement contentions. For example, Defendants' technical documents likely will show high-level architectures of the accused products, such as Defendants' federated identity services (which is relevant to the '346 patent) as well as which accused products use which services. As such, the core technical documents that Defendants refuse to produce are critical to understanding Defendants' code and preparing IBM's initial infringement contentions.

Accordingly, the Court should order Defendants to promptly produce "operation manuals, product literature, schematics, and specifications"—as well as any other core technical documents—showing how the accused products work. The Court also should extend IBM's deadline to submit initial infringement contentions until 28 days after Defendants complete that production (due to the holidays), so IBM has an opportunity to review and incorporate those overdue documents.[2]

---

[2] Apart from failing to provide source code for all representative games, Defendants failed to provide server-side code (concerning authenticating users, creating accounts, serving advertisements, and storing game state) and client-side source code for ad delivery services, among other deficiencies. (Exs. 6 & 8.)

The Honorable Gregory B. Williams	Page 4

                                              Respectfully,

                                              */s/ David E. Moore*

                                              David E. Moore

DEM:nmt/10453079/00311-00032

Enclosures
cc:    Clerk of Court (via hand delivery)
        Counsel of Record (via electronic mail)