## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

INTERNATIONAL BUSINESS MACHINES
CORPORATION,

        Plaintiff,

        v.

ZYNGA INC., and CHARTBOOST, INC.,

        Defendants.

C.A. No. 22-590-GBW

JURY TRIAL DEMANDED

## DEFENDANTS' ANSWER TO FIRST AMENDED COMPLAINT

Defendants Zynga Inc. ("Zynga") and Chartboost, Inc. ("Chartboost") (collectively "Defendants") hereby answer the claims in Plaintiff International Business Machines Corporation's ("IBM" or "Plaintiff") First Amended Complaint (D.I. 27 ("FAC")) as follows:

Defendants deny all allegations which they do not expressly admit. The numbered paragraphs in this Answer correspond to the numbered paragraphs of the FAC. Plaintiff's headings are restated for ease of reference, but no admissions are made thereby.

## INTRODUCTION

1.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

2.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

3.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

4.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

5.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

6.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

7.     Defendants admit that Zynga was founded in 2007 and its games include those in the *Words with Friends* and *Farmville* series, which users can play for free and also connect their social media accounts; that Zynga generates revenue by selling in-game virtual items to its users, by selling advertisements, and through its subsidiary Chartboost; that Zynga's games are played by millions of daily active users and have been downloaded over four billion times on mobile; and that Zynga has had over one billion dollars in annual revenue its last three fiscal years (2019–21). Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations and, on that basis, deny them. Defendants deny all allegations which they do not expressly admit.

8.     Defendants admit that a Zynga annual report includes the block quotation in paragraph 8 but deny that it includes any emphases. Defendants deny the allegations in the last sentence. Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations and, on that basis, deny them. Defendants deny all allegations which they do not expressly admit.

9.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first, second, and third sentences and, on that basis, deny them. Defendants deny the allegations in the last (fourth) sentence. Defendants deny all allegations which they do not expressly admit.

10.     Defendants deny that "[a]s Zynga's business has developed, it has continued to incorporate additional innovations pioneered by IBM." Defendants lack knowledge or information

sufficient to form a belief as to whether "[b]ut unlike dozens of Zynga's peers in the industry, Zynga does not have a license to use IBM's patents," and on that basis, deny the allegation. Defendants deny all allegations which they do not expressly admit.

11.     Defendants admit that IBM first contacted Zynga in 2014 to discuss licensing its patent portfolio. Defendants deny infringement and deny all remaining allegations.

12.     Defendants admit that IBM alleged to Zynga and Chartboost that they were purportedly infringing IBM patents, including identifying *CSR Racing 2*, *Words with Friends 2*, *Farmville 2: Country Escape*, and *Games of Thrones Slots Casino*. But Defendants deny that IBM "identified for Zynga how its products . . . practice multiple IBM patents" and deny all other allegations.

13.     Defendants deny the allegation that "Chartboost, Zynga's subsidiary, also uses IBM's patents without a license," and deny that Chartboost infringes any IBM patent. Defendants admit that in 2021, IBM twice contacted Chartboost to allege purported infringement of IBM's patents through Chartboost's advertising campaign platform. Defendants admit that IBM claimed it was ready to discuss alleged evidence of infringement and a possible resolution. Defendants deny infringement. Defendants admit that, after Zynga acquired Chartboost, Zynga handled discussions with IBM regarding its allegations as to Chartboost. Defendants deny any "months-long delay." Defendants deny the allegations in the last sentence. Defendants deny all allegations which they do not expressly admit.

14.     Defendants admit that IBM filed the current lawsuit against Defendants. Defendants deny the remaining allegations.

## NATURE OF THE CASE

15.     Defendants admit that this action purportedly arises under 35 U.S.C. § 271 but deny infringement and that any asserted patent is valid and enforceable. Defendants lack knowledge or information sufficient to form a belief as to whether the four asserted patents are "IBM's," and, on that basis, deny the allegations. Defendants deny all allegations which they do not expressly admit.

## THE PARTIES

16.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

17.     Admitted.

18.     Admitted.

## JURISDICTION AND VENUE

19.     Defendants incorporate by reference paragraphs 1–18.

20.     Admitted.

21.     Defendants admit the allegations in the first and second sentences. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the third sentence and, on that basis, deny them. Defendants deny the allegations in the last sentence. Defendants deny all allegations which they do not expressly admit.

22.     Defendants admit, solely for this action, that this Court has personal jurisdiction. Defendants deny infringement. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, on that basis, deny them.

## FACTUAL BACKGROUND

23.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.[1]

24.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

25.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

26.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

27.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

28.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

29.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

30.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

31.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

32.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

---

[1] The FAC includes argumentative headings which do not call for a formal response. In any case, Defendants deny them.

DEFENDANTS' ANSWER TO THE FIRST AMENDED COMPLAINT

33.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

34.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

35.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

36.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

37.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

38.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

39.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

40.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

41.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

42.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

43.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

44.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

45.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

46.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

47.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

48.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

49.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

50.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

51.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

52.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

53.     No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in U.S. Pat. No. 8,315,904 (the "'904 patent") is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

54.     No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

55.     No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

56.     No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

57.     No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

58.     No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

59.     No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

60.     No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

61.     No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

62.     No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

63.     No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

64.     No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

65.     No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

66.     No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

67.     No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

Defendants' Answer to the First Amended Complaint

68.     No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

69.     No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

70.     No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

71.     No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

72.     No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

73.     No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

74.     No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

75.     No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

76.     No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

77.     No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

78.     No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

79.     No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

80.     No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

81.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

82.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

83.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

84.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

85.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

86.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

87.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

88.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

89.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, deny them.

90.     Defendants admit that Zynga was founded in 2007 and provides games which are played by millions of people each day. Defendants admit that Zynga's website, www.zynga.com, lists over 90 games available to play through a browser or mobile application. Defendants admit that its games have been downloaded more than four billion times on mobile. Defendants admit that Zynga's games can be played for free and that Zynga generates revenue through the sale of in-game virtual items and through advertising services. Defendants admit that Chartboost is a mobile advertising and monetization platform that allows developers to optimize their programmatic advertising. Defendants admit that that Zynga has had over one billion dollars in annual revenue its last three fiscal years (2019–21). Defendants lack knowledge or information sufficient to form a

belief as to the remaining allegations and, on that basis, deny them. Defendants deny all allegations which they do not expressly admit.

91.   Denied.

92.   Denied.

93.   Defendants admit that, in June 2014, IBM informed Zynga that Zynga was purportedly infringing its patents, including U.S. Pat. No. 7,072,849 (the "'849 patent") and U.S. Pat. No. 7,631,346 (the "'346 patent"), but deny infringement. Defendants admit that Zynga and IBM corresponded as alluded to in the second and third sentences but deny IBM's characterizations of that correspondence. Defendants deny the allegations in the fourth (second-to-last) sentence. Defendants admit that, in December 2015, IBM notified Zynga of its purported infringement of the '849 and '346 patents and that Zynga could contact IBM if Zynga "wish[ed] to pursue a business resolution," but Defendants deny infringement. Defendants deny all allegations which they do not expressly admit.

94.   Defendants admit that, in 2020, IBM sent a purported jury verdict to Zynga but deny that Zynga infringes any asserted patent. Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations in the first sentence and, on that basis, deny them. Defendants admit that IBM and Zynga corresponded as alluded to in the second sentence but deny IBM's characterization of that correspondence. Defendants admit that, in January 2020, IBM purported to explain to Zynga how *CSR Racing 2* allegedly infringed the '346 patent but deny infringement and deny that IBM "specifically identified" anything. Defendants admit that, in March 2020, IBM purported to explain to Zynga how *Game of Thrones Slots Casino* Android app infringed the '849 patent but deny infringement and deny that IBM "identified" any infringement. Defendants

deny the allegations in the last sentence. Defendants deny all allegations which they do not expressly admit.

95.     Defendants deny the allegations in the first and second sentences. Defendants admit that, in May 2020, IBM and Zynga corresponded but deny IBM's characterization of that correspondence. Defendants admit that, in or around May 2020, IBM notified Zynga that *Farmville 2: Country Escape* purportedly infringed U.S. Pat. No. 7,702,719 (the "'719 patent") and that *Words with Friends 2* purportedly infringed the '346 patent but deny infringement. Defendants deny all allegations which they do not expressly admit.

96.     Defendants admit that IBM and Zynga conferred in July and August of 2020 and that IBM attempted to explain its alleged infringement theories regarding the '849, '346, and '719 patents. Defendants lack knowledge or information sufficient to form a belief as to whether these meetings took place "[a]fter Zynga reviewed IBM's latest materials" and, on that basis, deny the allegation. Defendants admit that IBM and Zynga corresponded as alluded to in the second sentence but deny IBM's characterization of that correspondence. Defendants deny the allegations in the last sentence. Defendants deny all allegations which they do not expressly admit.

97.     Defendants admit that IBM and Zynga conferred in or around April 2021 but deny IBM's characterization of that meeting. Defendants deny the second sentence. Defendants deny infringement, willful or otherwise. Defendants deny all allegations which they do not expressly admit.

98.     Defendants admit the first sentence. Defendants admit that, in 2021, IBM twice contacted Chartboost about Chartboost's alleged infringement but Defendants deny infringement. Defendants admit that, on June 16, 2021, IBM wrote to Chartboost that it allegedly infringed the '849 patent through the Chartboost SDK but Defendants deny infringement. Defendants admit that,

in that communication, IBM told Chartboost that it preferred a business resolution to settle the matter. Because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101, no response is required to IBM's allegation that "on July 21, 2021, IBM notified Chartboost that it also infringed the '904 patent through its Cross-Promotion Campaign interface." *See* D.I. 75. Defendants admit that IBM wrote to Chartboost that IBM was purportedly prepared to discuss alleged evidence of Chartboost's purported infringement and a possible resolution but deny that there is "detailed evidence of Chartboost's infringement" and deny infringement. Defendants admit that Chartboost contacted IBM in August 2021, that Zynga acquired Chartboost, and that Zynga would handle all discussions with IBM regarding Chartboost but deny the remaining allegations in the third-to-last sentence. Defendants deny infringement and all remaining allegations. Defendants deny all allegations which they do not expressly admit.

99.     Defendants admit that IBM and Zynga corresponded as early as 2014. Defendants deny that "IBM is left with no other option but to bring a lawsuit for patent infringement." Defendants deny all other allegations. Defendants deny all allegations which they do not expressly admit.

## COUNT ONE

## ZYNGA'S INFRINGEMENT OF THE '849 PATENT

100.     Defendants incorporate by reference paragraphs 1–99.

101.     Defendants lack knowledge or information sufficient to form a belief as to whether "IBM is the owner of all right, title and interest in the '849 patent" and whether "[t]he '849 patent was duly assigned to IBM," and, on that basis, deny the allegations. Defendants admit that the '849 patent purportedly issued on July 4, 2006 but deny that it is valid. Defendants admit that a purported

copy of the '849 patent is attached to the FAC as Exhibit A. Defendants deny all allegations which they do not expressly admit.

102.   Denied.

103.   Denied.

      a.   Denied.

      b.   Denied.

      c.   Denied.

      d.   Denied.

104.   Defendants deny infringement. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, on that basis, deny them.

105.   Defendants deny infringement. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, on that basis, deny them.

106.   Defendants deny infringement. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, on that basis, deny them.

107.   Denied.

108.   Defendants admit that Zynga has had knowledge of the '849 patent since approximately June 26, 2014. Defendants deny infringement.

109.   Denied.

110.   Denied.

111.   Denied.

112.   Defendants admit that Zynga's users agree to terms of service. Defendants deny infringement. Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations and, on that basis, deny them.

113.    Defendants lack knowledge or information sufficient to form a belief as to the allegations in the first and second sentences and, on that basis, deny them. Defendants admit that Zynga works with service providers. Defendants deny that Zynga "manage[s]" activities of customers. Defendants admit that Zynga's business is funded in part through advertising. Defendants deny the allegations in the last sentence. Defendants lack information or knowledge sufficient to form a belief as to the remaining allegations and, on that basis, deny them. Defendants deny all allegations which they do not expressly admit.

114.    Denied.

115.    Denied.

116.    Denied.

117.    Denied.

118.    Denied.

## COUNT TWO

## CHARTBOOST'S INFRINGEMENT OF THE '849 PATENT

119.    Zynga incorporates by references paragraph 1–118.

120.    Defendants lack knowledge or information sufficient to form a belief as to whether "IBM is the owner of all right, title and interest in the '849 patent" and whether "[t]he '849 patent was duly assigned to IBM," and, on that basis, deny the allegations. Defendants admit that the '849 patent purportedly issued on July 4, 2006 but deny that it is valid. Defendants admit that a purported copy of the '849 patent is attached to the FAC as Exhibit A. Defendants deny all allegations which they do not expressly admit.

121.    Denied.

122.    Denied.

        a.   Denied.

        b.   Denied.

        c.   Denied.

        d.   Denied.

123.    Defendants deny infringement. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, on that basis, deny them.

124.    Defendants deny infringement. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, on that basis, deny them.

125.    Defendants admit that Chartboost has had knowledge of the '849 Patent since June 16, 2021 but deny infringement. Defendants deny all allegations that it does not expressly admit.

126.    Denied.

127.    Denied.

128.    Denied.

129.    Defendants admit that Chartboost's users agree to terms of service. Defendants deny infringement. Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations and, on that basis, deny them.

130.    Defendants lack knowledge or information sufficient to form a belief as to the allegations in the first and second sentences and, on that basis, deny them. Defendants admit that Chartboost works with service providers. Defendants deny that Chartboost "manage[s]" activities of customers. Defendants deny the allegations in the last sentence. Defendants lack information or knowledge sufficient to form a belief as to the remaining allegations and, on that basis, deny them. Defendants deny all allegations which they do not expressly admit.

131.    Denied.

132.    Denied.

133.    Denied.

134.    Denied.

135.    Denied.

## **COUNT THREE**

## **ZYNGA'S INFRINGEMENT OF THE '346 PATENT**

136.    Defendants incorporate by reference paragraphs 1–135.

137.    Defendants lack knowledge or information sufficient to form a belief as to whether "IBM is the owner of all right, title and interest in the '346 patent" and whether "[t]he '346 patent was duly assigned to IBM," and, on that basis, deny the allegations. Defendants admit that the '346 patent purportedly issued on December 8, 2009 but deny that it is valid. Defendants admit that a purported copy of the '346 patent is attached to the FAC as Exhibit B. Defendants deny all allegations which they do not expressly admit.

138.    Denied.

139.    Denied.

      a.    Denied.

      b.    Denied.

      c.    Denied.

      d.    Denied.

140.    Denied.

      a.    Denied.

      b.    Denied.

      c.    Denied.

d.   Denied.

141.   Defendants deny infringement. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, on that basis, deny them.

142.   Denied.

143.   Defendants admit that Zynga has had knowledge of the '346 patent since approximately June 26, 2014. Defendants deny infringement.

144.   Denied.

145.   Denied.

146.   Denied.

147.   Defendants admit that Zynga's users agree to terms of service. Defendants deny infringement. Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations and, on that basis, deny them.

148.   Defendants lack knowledge or information sufficient to form a belief as to the allegations in the first and second sentences and, on that basis, deny them. Defendants admit that Zynga works with service providers. Defendants deny that Zynga "manage[s]" activities of customers. Defendants admit that Zynga's business is funded in part through advertising. Defendants deny the allegations in the last sentence. Defendants lack information or knowledge sufficient to form a belief as to the remaining allegations and, on that basis, deny them. Defendants deny all allegations which they do not expressly admit.

149.   Denied.

150.   Denied.

151.   Denied.

152.   Denied.

153.    Denied.

## **COUNT FOUR**

### **CHARTBOOST'S INFRINGEMENT OF THE '904 PATENT**

154.    Defendants incorporate by reference paragraphs 1–153.

155.    No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

156.    No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

157.    No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

      a.  No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

      b.  No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

      c.  No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

d.   No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

e.   No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

f.   No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

g.   No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

h.   No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

158.   No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

159.   No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

160.    No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

161.    No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

162.    No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

163.    No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

164.    No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

165.    No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

166.    No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

167.    No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

168.    No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

169.    No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

170.    No response to this paragraph is required because Count Four of the FAC was dismissed with prejudice when this Court found that the invention claimed in the '904 patent is patent ineligible under 35 U.S.C. § 101. *See* D.I. 75.

## <u>COUNT FIVE</u>

## <u>ZYNGA'S INFRINGEMENT OF THE '719 PATENT</u>

171.    Defendants incorporate by reference paragraphs 1–170.

172.    Defendants lack knowledge or information sufficient to form a belief as to whether "IBM is the owner of all right, title and interest in the '719 patent" and whether "[t]he '719 patent was duly assigned to IBM," and, on that basis, deny the allegations. Defendants admit that the '719 patent purportedly issued on April 20, 2010 but deny that it is valid. Defendants admit that a purported copy of the '719 patent is attached to the FAC as Exhibit D. Defendants deny all allegations which they do not expressly admit.

173.    Denied.

174.    Denied.

      a.  Denied.

      b.  Denied.

      c.  Denied.

175.    Defendants deny infringement. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, on that basis, deny them.

176.    Denied.

177.    Defendants admit that Zynga has had knowledge of the '719 Patent since May 20, 2020 but deny infringement.

178.    Defendants deny infringement. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations and, on that basis, deny them.

179.    Denied.

180.    Denied.

181.    Defendants admit that Zynga's users agree to terms of service. Defendants deny infringement. Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations and, on that basis, deny them.

182.    Defendants lack knowledge or information sufficient to form a belief as to the allegations in the first and second sentences and, on that basis, deny them. Defendants admit that Zynga works with service providers. Defendants deny that Zynga "manage[s]" activities of customers. Defendants admit that Zynga's business is funded in part through advertising. Defendants deny the allegations in the last sentence. Defendants lack information or knowledge sufficient to form a belief as to the remaining allegations and, on that basis, deny them. Defendants deny all allegations which they do not expressly admit.

183.    Denied.

184.    Denied.

185.    Denied.

186.    Denied.

187.    Denied.

## RELIEF REQUESTED

Defendants deny infringement. Defendants deny that IBM is entitled to any judgment against Zynga or Chartboost. Defendants deny that IBM is entitled to any damages, fees, or relief of any kind.

## DEMAND FOR JURY TRIAL

Defendants hereby demand a jury trial on all claims and issues so triable.

## DEFENSES

Defendants assert the following affirmative and other defenses in response to the allegations in the FAC without waiver, limitation, or prejudice. Defendants undertake the burden of proof only as to those defenses deemed affirmative defenses by law regardless of how such defenses are denominated herein. In addition to the affirmative and other defenses described below, Defendants reserve the right to assert additional affirmative and other defenses as they become known through further investigation and discovery.

## First Defense – Noninfringement

Defendants do not infringe and have not infringed, either directly or indirectly, any valid and enforceable claim of the '849, '346, and '719 patents (the "Asserted Patents"), either literally or under the doctrine of equivalents.

## Second Defense – Invalidity and Unenforceability

The claims of the Asserted Patents are invalid and/or unenforceable. For example, they fail to satisfy the conditions for patentability under the patent laws of the United States, pre-AIA 35 U.S.C. §§ 1 *et seq.*, including without limitation, pre-AIA 35 U.S.C. §§ 101, 102, 103, 112, 116, and 256, and/or because they fail to satisfy the requirements of other equitable and/or judicially-created doctrines. As one non-limiting example, the '849 patent is invalid per § 102 because the claimed invention was in public use, on sale, or otherwise available to the public more than one year prior to the filing of the '849 patent application in connection with IBM's Trintex venture with Sears and CBS. As another non-limiting example, the '849 patent is invalid in view of U.S. Pat. No. 5,796,967 under the doctrine of non-statutory obviousness-type double patenting. Further, one or more of the claims of the Asserted Patents are invalid for at least the reasons that will be set forth in Defendants' invalidity contentions, and are incorporated herein by reference.

## Third Defense – Prosecution History Estoppel

Plaintiff's claims of patent infringement are barred by the doctrine of prosecution history estoppel to the extent Plaintiff's interpretations of the claims of the Asserted Patents extend beyond or are inconsistent with statements, amendments, or positions made during prosecution and post-grant proceedings. Plaintiff is further estopped from construing one or more claims of the Asserted Patents to claim scope ceded during the prosecution and post-grant proceedings of the Asserted Patents to, for example, avoid prior art.

## Fourth Defense – Limitation on Damages

Plaintiff's claims for damages and costs are statutorily limited, in whole or in part, by one or more of 35 U.S.C. §§ 286, 287, and 288.

To the extent that Plaintiff seeks damages or asserts a claim for acts of alleged infringement occurring more than six years before filing suit, Plaintiff's recovery is barred in whole or in part under 35 U.S.C. § 286, which provides a six-year statute of limitations on damages.

To the extent that Plaintiff or any of Plaintiff's licensees failed to properly mark any of its relevant products as required by 35 U.S.C. § 287, or otherwise failed to give proper notice that Defendants' actions allegedly infringed any claim of the Asserted Patents, Defendants are not liable to Plaintiff for the acts alleged to have been performed before Defendants received notice that they were allegedly infringing the Asserted Patents.

Plaintiff is further precluded under 35 U.S.C. § 288 from recovering costs related to this action.

### Fifth Defense – No Irreparable Harm

Plaintiff is not entitled to any injunctive relief because any injury to Plaintiff is neither immediate nor irreparable, and Plaintiff has adequate remedies at law. Plaintiff does not have any competing product for which sales are allegedly being lost as a consequence of Defendants' alleged infringement, and at least the '849 and '346 patents are non-exclusively licensed to third parties. Thus, there is no immediate harm to IBM, and any harm, if ultimately found, would be adequately compensated by money damages.

### Sixth Defense – License

Plaintiff's claims are barred, in whole or in part, because Defendants and the accused products and conduct are licensed by Plaintiff under prior licenses and agreements to which Plaintiff is a party. Such licenses include at least IBM's licenses to Facebook and Google. For instance, Plaintiff accuses Zynga of infringing the '346 patent through Zynga's implementation of a "single sign-on" operation that allows a user to access features of Zynga's website and games

after authenticating themselves using Google or Facebook login credentials. Both Google and Facebook have license agreements with IBM that authorize use of the methods and systems claimed in the '346 patent. These licenses, and Google and Facebook's subsequent creation of APIs allegedly embodying the methods and systems claimed in the '346 patent, exhaust IBM's rights in that patent with regard to any user accessing Google or Facebook's APIs, including Zynga. IBM's licenses with Google and Facebook also create implied licenses in favor of any third-parties who implement the accused functionality as offered by Google and Facebook.

### Seventh Defense – Patent Exhaustion

Plaintiff's claims against Defendants are barred, in whole or in part, by the doctrines of full compensation, exhaustion, and/or first sale.

### Eighth Defense – Inequitable Conduct

The '849 patent is unenforceable based on the inequitable conduct and repeated breaches of the duty of candor by those with a duty of candor in connection with the prosecution the '849 patent application and related applications, including the application that resulted in U.S. Pat. No. 5,796,967 (the "'967 patent").

Both the '849 and '967 patent applications are divisions of the same application, were filed on November 26, 1993, claim an earliest possible priority of July 15, 1988, and were prosecuted by IBM's attorney Paul C. Scifo. However, each application was examined by a different United States Patent and Trademark Office ("USPTO") examiner. Ultimately, the '967 patent issued on August 18, 1998, and the '849 patent issued on July 4, 2006.

As detailed below, Mr. Scifo repeatedly withheld material information from the USPTO during the prosecution of the '849 and '967 applications with the specific intent to deceive the USPTO.

*First*, Mr. Scifo and others with a duty to disclose material information to the USPTO, including the inventors, intentionally withheld IBM's pre-critical date (*i.e.*, July 15, 1987) commercialization efforts of the inventions in the '849 and '967 patents to avoid a public-use and/or on-sale bar.

*Second*, Mr. Scifo intentionally withheld the existence of the '967 application to the examiner of the '849 patent application to avoid a double-patenting rejection. The '967 patent expired on August 18, 2015.

1. **Mr. Scifo Intentionally Hid IBM's Pre-Critical Date Commercialization Efforts of the '849 and '967 Patents from the USPTO to Avoid a Public-Use/On-Sale Rejection.**

   a. **The Invention of the '849 Patent Was Sold, Offered for Sale, and Otherwise Publicly Available Prior to July 15, 1987.**

IBM claims to have developed technology for "presenting applications and advertisements in an interactive service that would take advantage of the computing power of each user's PC." FAC ¶ 31. That technology was initially developed by IBM's Trintex venture with Sears and CBS. *See* Michael Weinstein, *System Flexibility Held Key to Videotex Success; Officer of Consortium About to Enter Field Assesses the Service's Prospects*, American Banker, Oct. 2, 1984, at 1 (attached as Ex. A). The Trintex technology was the basis for the Prodigy online service. *See* FAC ¶ 32; *see also* Bill Saporito, *Are IBM and Sears Crazy? Or Canny?*, Fortune, Sept. 28, 1987 (describing the evolution of Prodigy from Trintex) (attached as Ex. B); *International Business Machines, Corporation v. Groupon, Inc.*, No. 1:16-cv-122-LPS (D. Del. Sept. 18, 2018), D.I. 408 ("Trintex changed its name to Prodigy in 1988.").

IBM and Trintex aimed to and did commercialize the Trintex technology through advertising. *See* Ex. A at 2 (noting that Trintex expected its service "to be supported by advertisers"); Ex. B at 1 ("Prodigy expects to collect most of its revenue by sending to users

commercial messages from 60-odd advertisers"). This commercialization occurred prior to July 15, 1987.

IBM and Trintex publicly used and disclosed the Trintex technology. This public use and disclosure occurred prior to July 15, 1987 in sufficient detail to allow one of ordinary skill in the art to make and use what Trintex, IBM, and the inventors later sought to patent with the '849 and '967 applications. Numerous printed publications were publicly accessible prior to July 15, 1987, which described the Trintex technology in sufficient detail to allow one of ordinary skill in the art to make and use what Trintex, IBM, the prosecuting attorneys, and the inventors later sought to patent.

For example, as early as 1984, IBM began to attract advertisers to its service through its Trintex venture. Ex. A at 1 ("Mr. Warwick's presence at the speaker's rostrum at the National Retail Merchants Association conference indicates that Trintex is already trying to increase its visibility among department stores and specialty stores."). By April 6, 1987, Trintex was "approaching advertisers with the promise of a 1988 start-up." Cleveland Horton, *IBM, New Life for Videotex*, Advertising Age, Apr. 6, 1987 (attached as Ex. C). Specifically, Trintex was "soliciting charter advertisers" and had already signed "[a]t least one major food company." *Id.*

These pre-July 15, 1987 solicitations included specific terms for the delivery of advertisements. *See id.* ("Charter advertisers' rates are based on the number of subscribers viewing a particular ad."). These offers were commercial in nature, requiring advertisers to pay to publish its advertisements. Trintex would practice the purported inventions described and/or claimed in the '849 and '967 patents to publish those advertisements.

Prior to July 15, 1987, Trintex also offered a special program for direct marketers, based "on the number of orders placed through the service," and touted the platform's ability to partition

the user's screen to display advertisements alongside content. *Id.* (noting "about 20% of the screen is occupied by a teaser, or 'leader ad'" that the user can interact with "to reveal additional screens of advertising"). Trintex, IBM, the prosecuting attorneys, and the inventors would seek to patent these same concepts more than one year after the offers of sale. Specifically, Trintex, IBM, the prosecuting attorneys, and the inventors sought to protect these same concepts in the '849 and '967 patents, and related patents, which claim an earliest possible priority date of July 15, 1988.

Trintex also "approach[ed] national advertisers, financial services and retailers as potential advertisers." *Id.* Indeed, before the critical date, Trintex's vice president for product development, Harry E. Smith, "ha[d] been disclosing some of [Trintex's] plans [] in speeches to various groups." *Trintex to Aim On-Line Ads at Demographic Segments*, American Banker, Jun. 30, 1987, at 1 (attached as Ex. D). For example, in a talk to the Touche Ross electronic shopping conference in May 1987, he "describe[ed] what Trintex [could] do for marketing officers," including how the Trintex interface was partitioned so that "ads are displayed as subscribers view the editorial sections." *Id.*; *see also* '849 File History, 2022-02-27 BPAI Decision (attached as Ex. E) at 34 ("References 3, 6, and 7, dated before the critical date, discuss that Harry E. Smith, vice president of product and commercial development at Trintex, made several presentations about the Trintex service before the critical date . . . [He] presented 'peeks' at the services in three separate presentations including a presentation to the Direct Marketing Association in March [1987], an appearance at the Information Industry Association's annual meeting in mid-May, and a few days later at Touche Ross' Electronic Shopping 87 conference.") (cleaned up). Trintex's offers to sell advertising services to third parties were commercial offers to sell, including commercial offers to actually perform the processes later claimed in the '849 and '967 patents, and related patents, for consideration.

The commercial nature of Trintex's advertising sales efforts is confirmed by public statements including a May 1987 announcement that Trintex would feature a flat monthly fee to encourage greater consumer interest, and that Trintex would be able to subsidize that fee because "[t]he service [would] be supported largely by commercial clients and advertisers." David O. Tyson, *Meter Won't Run on Trintex Videotex; IBM-Sears Partnership Will Charge Only Flat Monthly Fee*, American Banker, May 20, 1987, at 1 (attached as Ex. F).

Prior to July 15, 1987, Trintex not only commercially offered to sell, but actually commercially sold advertising services to be delivered by performing the processes and using the apparatuses claimed in the '849 and '967 patents, and related patents. For instance, on information and belief, by May 26, 1987, Trintex announced that it had signed Levi Strauss & Co. and Chanel to be among its first advertisers. But these were only two among the initial 42 clients for Trintex, which also included Florsheim shoes, several sporting goods companies, and household product companies. By June 3, 1987, Trintex acknowledged that it "wou[ld] make its debut . . . with at least 44 other retailers on board, offering such products as Levi Strauss apparel, Chanel perfumes and cosmetics, Volkswagen cars and Bally fitness equipment." Janet Key, *Trintex's Aim: Retail Revolution*, Chicago Tribune, Jun. 3, 1987 (attached as Ex. G). And, by late June 1987 the list of already signed advertisers—*i.e.*, accepted commercial offers of sale—had grown to include Aetna Insurance, Dean Witter Reynolds, NEC Home Electronics, and Showtime.

In addition to its commercial offers to sell, Trintex and IBM published articles and made public presentations regarding the technology that it later sought to patent. During prosecution of the '849 patent, the Board of Patent Appeals and Interferences ("BPAI") independently located some articles describing just a few public disclosures. *See* Ex. E at 32–33. The members of, and inventors involved with, the Prodigy/Trintex service held public trials of the system and gave

public interviews and presentations about the system. Articles that describe the Prodigy/Trintex

service trials, interviews, and presentations include, but are not limited to:

a.  Paul Hurly et al., *The Videotex and Teletext Handbook* (Harper & Row, Publ. 1985), pp. i–xi, 11–93 (Chaps. 1–3), 130–59 (Chap. 5), 231–55 (part of Chap. 9), 282–91 (part of Chap. 10), and 380–81 (Appendix B).

b.  Cleveland Horton, *IBM, Sears shooting for '88 entry; New life for videotex, Advertising Age*, April 6, 1987, p. 1.

c.  Ellen Forman, *Surge seen for electronic shopping*, Women's Wear Daily, Vol. 153, p. 1, May 21, 1987.

d.  Jerrold Ballinger, *Trintex Signs up 42 Advertising Clients*; Is Hoping for Launch in Early '88, VP Says, DM News, June 1, 1987, p. 8.

e.  Cleveland Horton, *Big advertisers link to videotex venture*, Advertising Age, June 15, 1987, p. 72.

f.  Arthur Markowitz, *Trintex interactive videotex service will feature magazine-type format*, Discount Store News, Vol . 26, p. 2, June 22, 1987.

g.  *Trintex to Aim On-Line Ads At Demographic Segments*, The American Banker, June 30, 1987, p. 10.

h.  *Inside Trintex; Technology & Operations supplement*, Women's Wear Daily, Vol. 154, p. S1, September 8, 1987.

i.  David Kiley, *Trintex: Videotex ·Gets Personalized*, Adweek, October 12, 1987, Eastern Edition.

j.  Scott Mace, *Trintex System Offers Access To Variety of Consumer Services*, InfoWorld, p. 5, November 30, 1987.

(collectively, the "Trintex NEXIS Articles").

While examining the '849 application, the USPTO did not consider most, if not all, of the

trials, presentations, and interviews described in the Trintex NEXIS Articles because Mr. Scifo

and the inventors withheld them. The BPAI, itself, located this sampling of pre-critical date articles

describing the Trintex service and presentations and expressed concern about other public

disclosures which may not have been disclosed to the USPTO. Ex. E at 32–34 ("[T]he NEXIS

articles . . . raise questions of what else may have been publicly disclosed or on sale that has not been disclosed to the [USPTO].").

The BPAI correctly recognized that the Trintex NEXIS Articles it discovered were material to the '849 application's patentability and rejected numerous pending claims in light thereof. *Id.* at 32–49. These materiality findings apply equally to other related patents including the '967 patent and U.S. Patent. Nos. 5,347,632; 5,594,910; 6,195,661; 5,442,771; 6,195,661; 5,758,072; 6,182,123; 6,199,100; and 6,275,852. The Trintex NEXIS Articles were not disclosed in the '967 application nor in U.S. Patent Nos. 5,347,632; 5,594,910; 6,195,661; 5,442,771; 6,195,661; 5,758,072; 6,182,123; 6,199,100; and 6,275,852. Had they been disclosed, these patents would not have issued because the Trintex NEXIS Articles anticipated the claimed subject matter or rendered the claimed subject matter obvious.

The '849 patent claims are invalid due to public use of, commercial offers to sell, and printed publications describing the claimed subject matter prior to July 15, 1987. The commercial offers to sell occurred prior to July 15, 1987 and were material to the patentability of the '849 and '967 patents, and related patents, including those which the '849 patent claims priority to. These offers were to practice the methods and commercially exploit the systems which IBM would seek to patent more than one year later. Indeed, IBM admits that the '849 patent was intended to protect Trintex, later rebranded as Prodigy. *See* FAC ¶¶ 30–32. If these commercial offers and their subject matter were submitted during the prosecution of the '849 patent, as well as the other patents with which the '849 patent shares a priority claim or claims priority to, the '849 patent would not have issued.

### b.      Mr. Scifo Intentionally Withheld the Commercialization Efforts with Intent to Deceive the USPTO.

Mr. Scifo prosecuted the '849 patent from its application until 2002. In this capacity, he had a duty of candor and good faith in dealing with the USPTO. That duty included a duty to disclose to the USPTO all information known to be material to patentability. But he withheld material information with the intent to deceive the USPTO. He did not disclose IBM's pre-critical date commercialization of technology covered by the '849 patent. This commercialization includes invalidating commercial offers for sale within the meaning of the on-sale bar.

IBM admits that the Trintex/Prodigy service was for "presenting applications and advertisement in an interactive service." FAC ¶ 31. IBM admits that the '849 patented technology was developed as part of the efforts to launch the Trintex/Prodigy online service. *Id.* ¶¶ 31–32. Inventor Robert Filepp confirmed the same during trial testimony. *See Groupon*, 1:16-cv-122-LPS, D.I. 408 at 43–64, 68–109. Mr. Scifo was aware of and conveyed to the USPTO that the supposed inventions of the '849 patents related to the Trintex/Prodigy service. *See, e.g.*, '849 Prosecution History, 10-24-1994 Information Disclosure Statement.

Through both the Trintex and Prodigy phases, IBM aimed to commercialize its technology through advertising. By June 15, 1987, at least three dozen of Trintex's initial advertising clients had made an average financial commitment of between $30,000 to $40,000. Thus, from these initial clients alone, Trintex amassed around $1.25 million in financial commitments before June 15, 1987. Additionally, by June 15, 1987, Trintex had entered into numerous multiyear agreements with its initial advertising clients. All in all, prior to the earliest possible critical date of July 15, 1987, IBM's Prodigy/Trintex venture had attained approximately 60 advertising clients for its initial launch.

Mr. Scifo and others with a duty to disclose, including the inventors[2], misrepresented and withheld IBM's invalidating commercialization of the Trintex/Prodigy system from the USPTO with the intent of deceiving the USPTO. On information and belief, Mr. Scifo had knowledge of these pre-critical date commercialization efforts at least by October 19, 1994 through his investigation of the development and commercialization of the Prodigy service that resulted in a 34-page Information Disclosure Statement that he submitted to the Patent Office on October 24, 1994, describing the development and commercialization of the Prodigy service.

Mr. Scifo drafted this Information Disclosure Statement with the intent to mislead the USPTO by omitting the details of any pre-July 15, 1987 commercialization of Trintex/Prodigy to advertisers, and instead focused solely on end-user purchases through the Prodigy system which occurred after July 15, 1987. The Information Disclosure Statement did not contain information relating to Prodigy/Trintex's 60 advertising clients prior to the earliest possible critical date. Nor did it contain information regarding the extent of the financial commitments from those advertising clients. Mr. Scifo never disclosed Prodigy/Trintex's approximately 60 advertising clients from

---

[2] The inventors of the '849 patent and related patents include Robert Filepp, Alexander W. Bidwell, Francis C. Young, Allan M. Wolf, Duane Tiemann, Mel Bellar, Robert D. Cohen, James A. Galambos, Kenneth H. Appleman, and Sam Meo. On information and belief, at least Mr. Filepp was aware of the pre-commercialization efforts, given his testimony about the history of IBM and the history of Trintex/Prodigy. *See Groupon*, No. 1:16-cv-122-LPS, D.I. 408 at 41–44 ("[IBM was founded in] 1911 . . . This is a timeline that shows some selected highlights of IBM achievements from 1944 . . . Trintex was a joint venture of IBM, Sears and CBS . . . CBS had been involved in some early online testing . . . Trintex changed its name to Prodigy in 1988 . . . I became an employee of Trintex in September of '85 . . . [A]ll these [Trintex employees] had to have a common understanding of what they were working toward . . ."). On information and belief, the other inventors were also aware of the commercialization efforts. *See id.* at 45 ("Ken Appelman worked on the reception system . . . Alex Bidwell was one of the system architecture group. L Wolf was the system architecture and managed the group . . . James Galambos was more of a user experience guy. He was on the content side. And Sam Meo works on the reception system . . . and eventually managed the reception group."). However, the inventors intentionally withheld information about Trintex/Prodigy's commercialization efforts from the USPTO with the intent to deceive. *See* '849 File History, 1993-11-26 Oath.

prior to the earliest possible critical date, nor did he disclose the extent of the financial commitments from those advertising clients. Instead of disclosing IBM's extensive advertising clients and over $1 million in commitments, Mr. Scifo disclosed only approximately $149,650 in end-user purchases which occurred after July 15, 1987 and claimed that all commercial activity from before filing was "minimal and wholly incidental to the experimental nature of testing." Because Mr. Scifo intentionally withheld information regarding the magnitude of IBM client commitments resulting from IBM's commercialization of the Prodigy system prior to the critical date, the USPTO examiner could not properly issue a rejection of the '849 application based upon the on-sale bar.

Mr. Scifo had knowledge of Prodigy/Trintex's pre-critical date commercializing efforts in 2002 when, during prosecution of the '849 patent, the BPAI informed Mr. Scifo that it independently located the Trintex NEXIS Articles which described some of the commercialization efforts from before the critical date. Following the BPAI's identification of these articles, Mr. Scifo did not submit a correction to his earlier information disclosure statement.

The fact that the commercial offers to sell precede July 15, 1987—and would preclude issuance of the '849 patent and its related patents—creates a reasonable inference that they were intentionally withheld with an intent to deceive the USPTO. The reasonableness of this inference was confirmed during the prosecution of the '849 patent and related applications. The BPAI expressed concerns about the withheld Trintex NEXIS articles and also with respect to what else was withheld: "In addition to the value of the NEXIS articles for what they teach on their face as prior art, the articles, especially those published before the critical date, which cannot be sworn back of or otherwise overcome, raise questions of what else may have been publicly disclosed or on sale that has not been disclosed to the [USPTO]." Ex. E at 34. The BPAI further explained that:

"These articles raise a question of exactly what else was disclosed about the Trintex service to the public in these speeches before the critical date, apparently without any conditions of confidentiality (since the information found its way into some NEXIS articles), which would have a bearing on the issue of public use." *Id.* at 35. "Appellants have not disclosed these presentations to the USPTO or what else was disclosed at the presentations." *Id.*

Further confirming Mr. Scifo's intent to deceive and failure to comply with the duty to disclose, IBM responded to the BPAI's concerns by firing Mr. Scifo and filing a petition to expunge the BPAI's comments relating to Mr. Scifo's withholdings. *See* '849 File History, 04-29-2002 Petition by IBM. These actions by IBM support that Mr. Scifo was acting with an intent to deceive the USPTO.

The claims of the '849 patent would not have issued if Mr. Scifo had dutifully disclosed the material information and prior commercialization, public uses, and public disclosures of the technology that IBM sought to patent with the '849 and '967 applications. The material information Mr. Scifo withheld from the USPTO satisfies the "but-for" materiality test for showing inequitable conduct. For instance, had Mr. Scifo disclosed to the USPTO the fact that Prodigy/Trintex had approximately 60 advertising clients prior to the earliest possible critical date and over $1 million in financial commitments from its advertising clients, the USPTO would not have issued the '849 patent because this pre-critical date commercialization constitutes an invalidating commercial offer for sale within the meaning of the on-sale bar. For these reasons, the '849 patent is unenforceable under the doctrine of inequitable conduct due to the repeated breaches of the duty of candor by those who owed a duty of candor to the USPTO, including Mr. Scifo, breaches made with the intent of deceiving the USPTO in connection with the prosecution of the application that resulted in the '849 patent.

2. **Mr. Scifo Intentionally Hid the '967 Application from the Examiner of the '849 Application to Avoid a Double-Patenting Rejection.**

Mr. Scifo also prosecuted '967 patent. In fact, Mr. Scifo filed applications for the '967 patent and '849 patent on the same day—November 26, 1993. Both are purportedly divisional applications of the application that ultimately issued as U.S. Patent. No. 5,347,632 (the "'632 patent").

However, the '967 and '849 applications were examined by different examiners at the USPTO. Mr. Scifo, with the intent to deceive the USPTO, hid the prosecution of the co-pending '967 and '849 patent applications from their respective examiners. In doing so, Mr. Scifo prevented the examiners from developing an understanding of the claims which IBM sought so that one or both examiners could issue a proper double patenting rejection. Had the co-pending applications been disclosed to the USPTO, the '849 patent would not have issued due to the prohibition on double patenting.

The '967 and '849 patents have similar claims. A chart showing the similarity of the claims of the '967 and '849 patents was publicly filed in *International Business Machines Corporation v. Priceline Group Inc. et al.*, No. 15-cv-137-LPS (D. Del.), D.I. 103-4, attached as Exhibit H and incorporated by reference herein. As this chart demonstrates, the two patents claim obvious variations of the same alleged invention. As such, information that is material to the patentability of one is material to the patentability of the other.

Through his prosecution of the '849 patent, Mr. Scifo had knowledge of all office actions and notices relating to the '849 application until at least 2002. During this 8-year period, Mr. Scifo did not disclose to the examiner of the '849 application the existence of the co-pending '967 application. Nor did he disclose the '967 patent when it issued on August 18, 1998. Thus, Mr. Scifo prevented the examiner of the '849 application from determining that the '849 application

sought claims which were patentably indistinct from the '967 claims. By withholding the existence of the co-pending applications, Mr. Scifo hid from the examiners the fact that IBM was applying for multiple patents on the same subject matter. The issuance of both the '967 and '849 patents has therefore resulted in monopoly power for IBM over the same invention for years longer than permitted by the United States patent laws.

Mr. Scifo intended to deceive the USPTO by withholding information regarding the co-pending '967 application as demonstrated by his pattern of repeatedly withholding plainly material information from the USPTO examiners in connection with the '849 application and related applications, as described above. As an additional example, just as Mr. Scifo did not disclose the '967 application to the '849 application examiner, Mr. Scifo did not disclose to the examiner of the '967 application the existence of the co-pending '849 application. Thus, Mr. Scifo did not give the examiner of the '967 application the necessary information to determine whether the '967 application sought claims which were patentably distinct from the '849 application's claims. As a further illustration, during the prosecution of the '967 application, Mr. Scifo had knowledge of U.S. Patent No. 4,688,167, issued to Arun K. Agarwal ("Agarwal reference"), attached as Exhibit I. The Agarwal reference is prior art to the '849 and '967 patents and is material to their patentability. Mr. Scifo was aware of the Agarwal reference and its materiality at least as early as October 27, 1997, when the examiner of the '849 application rejected certain '849 claims in light of the Agarwal reference. Despite receiving this rejection several months before the '967 patent issued, Mr. Scifo never disclosed the Agarwal reference to examiner for the '967 application. The Agarwal reference is not cumulative of the art that was before the examiner of the '967 patent. Indeed, the Agarwal reference anticipates and/or renders obvious one or more claims of the '967 patent. A chart mapping the claims of the '967 patent to the Agarwal reference was publicly filed

DEFENDANTS' ANSWER TO THE FIRST AMENDED COMPLAINT

in *Priceline*, No. 15-cv-137-LPS, Dkt. 103-3, and is incorporated by reference herein and attached as Exhibit J.

In yet another example of Mr. Scifo's withholding material information from the Patent Office, Mr. Scifo did not disclose to the examiner of the '967 application the numerous office actions rejecting the '849 claims prior to the issuance of the '967 patent. These office actions included:

    a.    An April 19, 1994, office action rejecting all claims of the '849 application;

    b.    A June 15, 1995, office action rejecting all claims of the '849 application;

    c.    An April 30, 1996, office action finally rejecting all claims of the '849 application; and

    d.    An October 27, 1997, office action rejecting all claims of the '849 application.

These office actions were material to the patentability of the '967 patent. For example, the June 15, 1995 office action rejecting claims of the '849 application reads directly on the claims of the '967 patent. As an additional example, the October 27, 1997 office action rejecting claims of the '849 patent application was based on two particularly material prior art references—the anticipatory Agarwal reference and U.S. Patent No. 4,805,134, issued to Seraphin B. Calo.

The most reasonable inference that can be drawn from Mr. Scifo's misrepresentations and repeated pattern of withholding material information from the USPTO and the examiners of the '849 application is that Mr. Scifo withheld and misrepresented material information regarding the '849 patent with the intent to deceive. Had Scifo disclosed the '967 application or '967 patent to the examiner of the '849 application, one or more claims of the '849 patent would not have issued because they would have been subject to a double patenting rejection. *See* Ex. H (chart comparing the limitations of the '967 and '849 patents). For these reasons, the '849 patent is unenforceable under the doctrine of inequitable conduct due to repeated breaches of the duty of candor by those

who owed a duty of candor to the USPTO, including Mr. Scifo, made with the intent of deceiving the USPTO in conjunction with the prosecution of the application that resulted in the '849 patent.

### **Ninth Defense – Collateral Estoppel**

IBM is precluded from relitigating theories of infringement and/or claim construction positions that were finally and necessarily decided in prior lawsuits and administrative proceedings including without limitation:

- *IBM v. Amazon.com, Inc.*, No. 9:06-cv-242 (E.D.T.X. Oct. 23, 2006);

- *IBM v. The Priceline Group*, No. 1:15-cv-137 (D. Del. Feb. 9, 2015);

- *Priceline.com LLC v. IBM*, IPR Nos. 2016-608, 2016-609 (PTAB Feb. 10, 2016);

- *IBM v. Groupon*, No. 1:16-cv-122 (D. Del. Mar. 2, 2016);

- *Kayak Software Corporation v. IBM*, CBM Nos. 2016-75, 2016-76 (PTAB May 17, 2016);

- *Groupon, Inc. v. IBM*, IPR No. 2017-1158 (PTAB Mar. 24, 2017);

- *IBM v. Iancu*, Nos. 2018-1065, 2018-1066 (Fed. Cir. Oct. 17, 2017);

- *IBM v. Expedia, Inc.*, No. 1:17-cv-1875 (D. Del. Dec. 29, 2017);

- *IBM v. Booking Holdings Inc.*, No. 2018-1574 (Fed. Cir. Feb. 15, 2018);

- *Expedia, Inc. v. IBM*, IPR No. 2018-1685 (PTAB Sept. 7, 2018);

- *Expedia, Inc. v. IBM*, IPR No. 2018-1743 (PTAB Sept. 17, 2018);

- *Expedia, Inc. v. IBM*, IPR No. 2019-404 (PTAB Dec. 6, 2018);

- *IBM v. Zillow Group, Inc.*, No. 8:19-cv-1777 (C.D. Cal. Sept. 17, 2019);

- *IBM v. Airbnb, Inc.*, No. 1:20-cv-351 (D. Del. May 11, 2020);

- *IBM v. Zillow Group, Inc.*, No. 2:20-cv-851 (W.D. WA May 28, 2020);

- *Zillow, Inc. v. IBM*, IPR Nos. 2020-1657, 2020-1658 (PTAB Sept. 18, 2020);

- *Chewy, Inc. v. IBM*, No. 1:21-cv-1319 (S.D.N.Y. Feb. 15, 2021);

- *IBM v. Rakuten, Inc.*, No. 1:21-cv-461 (D. Del. Mar. 29, 2021);

- *Ebates Performance Marketing, Inc. v. IBM*, IPR No. 2022-646 (PTAB Mar. 28, 2022);

- *Chewy, Inc. v. IBM*, No. 22-1756 (Fed. Cir. May 5, 2022); and

- *Zillow Group, Inc. v. IBM*, IPR No. 2023-259 (PTAB Nov. 25, 2022).

### Tenth Defense – Prosecution Laches

Plaintiff's claims of infringement of the '849 patent are barred, in whole or in part, by the doctrine of prosecution laches. For example, the '849 patent claims priority to an application that was filed July 15, 1988, but due to its unreasonable prosecution, it did not issue until July 4, 2006. As a result, the '849 patent enjoys an inequitable lifespan of 35 years.

### Eleventh Defense – Unclean Hands

Plaintiff's claims are barred, in whole or in part, by Plaintiff's unclean hands as demonstrated at least by its conduct set forth in Defendants' Eighth Affirmative Defense of inequitable conduct and Tenth Affirmative Defense of prosecution laches. Those allegations are incorporated by reference herein.

### Twelfth Defense – Failure to State a Claim

The FAC fails to state a claim upon which any relief can be granted against Defendants. As one non-limiting example, the FAC fails to identify cognizable theories of indirect infringement regarding the Asserted Patents insofar as it fails to plead facts giving rise to a reasonable inference that Defendants committed affirmative acts to induce infringement. As another non-limiting example, regarding the '849 patent, the FAC fails to plead facts giving rise to a reasonable inference that Defendants direct or control a third party to perform the "selectively storing" step.

### Thirteenth Defense – Waiver

Plaintiff's claims for relief are, in whole or in part, barred by the doctrine of waiver. As one non-limiting example, Plaintiff waived any infringement claims against Defendants on the

'346 patent based on Plaintiff's conduct as described regarding Defendants' Sixth Defense of license. Those allegations are incorporated by reference herein. As another non-limiting example, Plaintiff waived its infringement claims on all of the Asserted Patents when it ceased licensing communications with Defendants from approximately late 2015 through early 2020.

## Fourteenth Defense – Equitable Estoppel

Plaintiff's claims for relief are barred, in whole or in part, by the doctrine of equitable estoppel. For example, with respect to the '849 and '346 patents, IBM caused Zynga to reasonably infer that IBM did not intend to enforce these patents because IBM went silent for approximately four years after claiming that various Zynga products infringed them; Zynga relied on IBM's silence by, *inter alia*, continuing to invest in the purportedly infringing products; and Zynga would suffer material, economic and evidentiary prejudice because of its reliance on IBM's silence if IBM were allowed to proceed with its claims on these two patents.

## PRAYER FOR RELIEF

Wherefore, having fully answered, Defendants pray for judgment as follows:

A.     That the Court fully and finally dismiss Plaintiff's First Amended Complaint against Defendants (and each and every claim therein) with prejudice and that Plaintiff take nothing from Defendants pursuant to the claim alleged in the First Amended Complaint;

B.     That the Court enter judgment in Defendants' favor and against Plaintiff and declare that Defendant does not infringe and has not infringed the Asserted Patents, that said patents are invalid, and that said patents are unenforceable against Defendants;

C.     That the Court award Defendants their costs of suit;

D.     That the Court find this case to be an exceptional case and award Defendants their reasonable attorneys' fees under 35 U.S.C. § 285 or otherwise; and

E.      That the Court grant Defendants further relief as the Court deems just and proper.

Dated: December 7, 2022

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar. No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Alyssa Caridis (admitted pro hac vice)
Jake O'Neal (admitted pro hac vice)
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 S Grand Ave, Ste 2700
Los Angeles, CA 90071
(213) 629-2020
acaridis@orrick.com
jake.oneal@orrick.com

Clement S. Roberts (admitted pro hac vice)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
(415) 773-5700
croberts@orrick.com

Evan D. Brewer (admitted pro hac vice)
ORRICK, HERRINGTON & SUTCLIFFE LLP
401 Union St, Ste 3300
Seattle, WA 98101
(206) 839-4300
ebrewer@orrick.com

Richard F. Martinelli (admitted pro hac vice)
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY 10019
(212) 506-5000
rmartinelli@orrick.com

**_Attorneys for Defendants Zynga Inc. and Chartboost, Inc._**

DEFENDANTS' ANSWER TO THE FIRST AMENDED COMPLAINT