# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

INTERNATIONAL BUSINESS MACHINES )
CORPORATION, )
                                )
        Plaintiff,        )    C.A. No. 22-590-GBW
                                  )
       v.                )    **JURY TRIAL DEMANDED**
                                  )
ZYNGA INC., and CHARTBOOST, INC., )
                                  )
        Defendants.     )

## PLAINTIFF IBM'S SECOND RULE 30(B)(6) NOTICE OF DEPOSITION TO DEFENDANTS ZYNGA, INC. AND CHARTBOOST, INC.

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure and the Local Rules of this Court, Plaintiff International Business Machines Corporation ("IBM"), by its counsel, will take the deposition upon oral examination of Defendants Zynga Inc. and Chartboost, Inc. (collectively "Defendants") regarding the subject matter set forth in the attached Schedule B, which shall be interpreted in accordance with the definitions set forth in the attached Schedule A.

The deposition will take place on Friday, June 23, 2023, starting at 9:30 AM (EST), at the office of Desmarais LLP, 230 Park Avenue, New York, New York 10169, or at such other time and place as may be agreed upon in writing by the parties or ordered by the Court. The deposition will be taken before a Notary Public or other person authorized to administer oaths pursuant to Rule 28 of the Federal Rules of Civil Procedure, and will continue day to day until completed. The deposition will be recorded by audio, video, stenography, and/or real-time computer means.

In accordance with Rule 30(b)(6) of the Federal Rules of Civil Procedure, Defendants shall designate one or more officers, directors, managing agents, or other persons who consent to testify on their behalf as to each of the topics set forth in the attached Schedule B. IBM is available to promptly confer with Defendants about the matters for examination in the attached Schedule B.

*See* Fed. R. Civ. P. 30(b)(6) ("Before or promptly after the notice or subpoena is served, the serving party and the organization must confer in good faith about the matters for examination."). To that end, IBM requests that Defendants identify the individual(s) who will testify regarding each topic at least 7 calendar days before the noticed deposition.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

John M. Desmarais
Karim Z. Oussayef
Lindsey E. Miller
Tamir Packin
Jordan N. Malz
Jonas R. McDavit
Edward Geist
Raymond N. Habbaz
William Vieth
Benjamin Rodd
Amy I. Wann
Kyle G. Petrie
Caitrianne Feddeler
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Tel: (212) 351-3400

Dated:  May 24, 2023
10831647 / 00311.00032

By:  */s/ David E. Moore*
    David E. Moore (#3983)
    Bindu A. Palapura (#5370)
    Andrew L. Brown (#6766)
    Hercules Plaza, 6th Floor
    1313 N. Market Street
    Wilmington, DE  19801
    Tel:  (302) 984-6000
    dmoore@potteranderson.com
    bpalapura@potteranderson.com
    abrown@potteranderson.com

*Attorneys for Plaintiff International Business Machines Corporation*

# SCHEDULE A
# DEFINITIONS

1.      As used herein, "Patents-In-Suit" means all patents asserted by IBM in this case now or in the future, including without limitation United States Patent No. 7,072,849 ("the '849 patent"), U.S. Patent No. 7,631,346 ("the '346 patent"), and U.S. Patent No. 7,702,719 ("the '719 patent").

2.      As used herein, "Accused Products" means any product, application, service, game, or method accused by IBM of infringing any claim of any of the Patents-In-Suit under any subsection of 35 U.S.C. § 271, including without limitation all products identified in IBM's May 2, 2022 Complaint; IBM's September 21, 2022 Preliminary Identification of Accused Products; IBM's February 1, 2023, Preliminary Identification of Asserted Claims; IBM's February 28, 2023, Initial Infringement Contentions; any amendments, supplements, or updates to any of the foregoing.  By way of example and not limitation, "Accused Products" includes: (1) Zynga's games, whether accessed through the Zynga websites, Zynga mobile applications, Zynga's SDKs, or other websites or applications; (2) Zynga's websites located at the URLs www.zynga.com and www.zyngagames.com, including the desktop version, mobile version, and affiliated websites; (3) Zynga's mobile applications, including Android and iOS Zynga mobile applications; (4) the Chartboost SDK; (5) the Chartboost cross-promotion campaign interface; and (6) the Chartboost website located at [www.chartboost.com](www.chartboost.com).

3.      As used herein, "Zynga" means Zynga Inc. and any predecessors, divisions, departments, subsidiaries, parents, affiliates, present or former officers, directors, employees, agents, counsel, representatives, and others authorized to act on behalf of Zynga Inc., and is inclusive of any other current or previous names for the corporate entity referred to as "Zynga."

4.      As used herein, "Chartboost" means Chartboost, Inc. and any predecessors, divisions, departments, subsidiaries, parents, affiliates, present or former officers, directors, employees, agents, counsel, representatives, and others authorized to act on behalf of Chartboost, Inc., and is inclusive of any other current or previous names for the corporate entity referred to as "Chartboost."

5.      As used herein, "Defendants," "You," and "Your" means Zynga and Chartboost.

6.      As used herein, "Plaintiff" and "IBM" means International Business Machines Corporation.

7.      As used herein, "include" and "including" shall be construed to mean "without limitation," so as to acquire the broadest possible meaning.

8.      As used herein, "and" and "or" shall be construed conjunctively and disjunctively, so as to acquire the broadest possible meaning.

9.      As used herein, "any" and "all" shall each be construed to mean "each and every," so as to acquire the broadest possible meaning.

10.     The singular and masculine form of a noun or pronoun shall embrace, and shall be read and applied as, the plural or the feminine or neuter, as the particular context makes appropriate and to give the noun or pronoun the broadest possible meaning.

11.     As used herein, "document" has the same broad meaning as in Rule 34 of the Federal Rules of Civil Procedure.  The term "document" also encompasses tangible things.

12.     As used herein, "concerning" or "relating to" means, without limitation, identifying, describing, discussing, concerning, assessing, stating, reflecting, constituting, containing, embodying, tending to support or refute, or referring directly or indirectly to the particular subject matter identified.

13.     As used herein, "Complaint," "Answer," and "Affirmative Defense," shall mean the pleadings as originally filed or as amended or supplemented throughout the progression of the case.

14.     As used herein, "www.zynga.com" means the website located at www.zynga.com, as well as the domain of [www.zynga.com](www.zynga.com).

15.     As used herein, "www.zyngagames.com" means the website located at www.zyngagames.com, as well as the domain of www.zyngagames.com

16.     As used herein, "www.chartboost.com" means the website located at www.chartboost.com, as well as the domain of [www.chartboost.com](www.chartboost.com)

17.     As used herein, "Transaction Event(s)" means any revenue-generating event, including but not limited to user queries, search hit clicks, purchases (*e.g.*, purchases of virtual items or currency), subscriptions, pre-orders, completion of pre-orders (*i.e.*, pre-orders that are not cancelled), ad-related orders, ad-related purchases, advertisement impressions, or advertisement clicks.

18.     As used herein, "Advertisements" means all advertisements presented by the Accused Products, including without limitation, interstitial advertisements, banner advertisements, in-game advertisements for virtual goods, including in-game currency, and rewarded advertisements.

19.     As used herein, "Source Code" means any software, markup language files, style sheet language files, template language files, programming language files, configuration files, source code, object code, or other electronic information for directing the operation of a computer, mobile device, website, web browser or for processing electronic data, including but not limited to computer instructions and data definitions expressed in a form suitable for input to an assembler,

compiler, other translator, or other data processing module. This definition includes, but is not limited to, JavaScript, Java, Java Server Pages (JSP), Active Server Pages (ASP) (including .Net ASP), VBScript, C++, CPP, C, C#, Objective-C, Lua, PHP, Swift, Python, Mustache, CoffeeScript, Ruby, Kotlin, SQL or other query languages, PostScript, Jade, Apache Velocity Templates, HTML, CSS, XML, batch files, and shell scripts.

20. As used herein, "Third-Party Platforms" means any platform besides Zynga or Chartboost, including but not limited to Facebook, Google, Google Play Games, Apple, and Apple Game Center.

21. As used herein, "Confluence" refers to the collaboration software developed by Atlassian and used by You, including any related workspaces, collaborative environments, cloud-based software, data centers, and servers.

22. As used herein, "Zynga User Account(s)" means those Zynga accounts that represent a user's identity or identify a user, allow users to authenticate, are used to secure game progress by connecting Zynga User Accounts to Zynga Game Accounts, are used to recover access to Zynga Game Accounts, and/or let Zynga identify a user across Zynga's games. *See* ZYNGA_IBM_0002802, ZYNGA_IBM_0002325.

23. As used herein, "Zynga Game Account(s)" means those Zynga accounts that allow game clients to secure player progress by providing playerid and secure authentication mechanisms, are secured by frictionless logins (*e.g.*, Apple Game Center or Google Play Games) or secured by a Zynga User Account, and/or are used to identify player progress for a specific game. *See* ZYNGA_IBM_0002802, ZYNGA_IBM_0002325.

24. As used herein, "Identification Service" means any identification service used with the Accused Instrumentalities, including at least Custom Gram ID Service, Custom Peak ID

4

Service, Custom SGG ID Service, Custom Starlark ID Service, Draft4, Draft5, ZIS, Custom WWF Legacy ID Service, Custom Poker Legacy ID Service. See Nov. 30, 2022, Email from Mr. Moss.

25.    As used here, "Ad Service" means any advertising service used with the Accused Instrumentalities, including at least Admob, Applovin MAX, Helium, Chartboost, Ironsource, MoPub, Unity, and ZADE. See Oct. 17, 2022, Email from Mr. Moss.

26.    As used herein, the term "Zynga Corporate Entity" means any corporation, organization, company, or party that is a parent, subsidiary of, subsidiary of the same parent, or otherwise related to Zynga Inc.

27.    As used herein, the term "Sign-On-Services" means any service related to allowing a user to sign-on, sign-in, sign-up, log-on, log-in, or otherwise access services under one or more Zynga Corporate Entities, including login or sign-in services provided through Facebook, Google, Google Play Games, Apple, or Apple Game Center.

## SCHEDULE B
## TOPICS

11.    The identity, type, location, and organization of financial documents related to the

Accused Products, including:

    a.    Defendants' revenues, costs, and profits

    b.    Defendants' revenues, costs, and profits from "Advertising Bookings," including

        from banner, rewarded, native, prestitial, and interstitial Advertisements;

    c.    Defendants' revenues, costs, and profits from "Userpay Bookings," including from

        in-application or in-game virtual goods or currencies;

    d.    Transactions involving the use, implementation, offer, sale, or provision of each

        Accused Product, including revenues, costs, and profits associated with each such

        transaction;

    e.    Defendants' business plans and strategies relating to the development, acquisition,

        launch, and sale of each Accused Instrumentality, including market projections

        presented or provided to Defendants' management, executives, Board of Directors,

        and/or investors;

    f.    Valuations related to any Accused Products, including valuations conducted in

        connection with Defendants' acquisitions of the Accused Products;

    g.    Financial projections, estimates, and forecasts for the Accused Products;

    h.    Products and services sold along with, for use with, or in connection with each of

        the Accused Products.

12.    ZYNGA_IBM_0002604, including how the document was compiled, the source of

its data, the frequency with which the source data is collected, and the identity of persons and

teams responsible for the source data.

13.     The identity, type, location, and organization of documents related to metrics Defendants track related to the Accused Products, including:

    a.   DAUs (Daily Active Users);

    b.   MAUs (Monthly Active Users);

    c.   MUUs (Monthly Unique Users);

    d.   MUPs (Monthly Unique Payers);

    e.   ABPUs (Average Daily Bookings Per Average DAU);

    f.   Downloads;

    g.   Installs;

    h.   Advertising conversions (including advertising impressions, fill rate, requests, attempts, responses, etc.);

    i.   Transaction conversions;

    j.   Completed transactions;

    k.   Abandoned transactions;

    l.   Sign-in statistics;

    m.   Transaction Events (such as promotions selected, opportunities for rewards selected, coupons used, products purchased, offers purchased, or merchants visited).

14.     Defendants' methodologies for calculating the metrics in Topic No. 13, including how Defendants track these metrics on a game-by-game basis, the frequency with which these metrics are collected and reported, and the identity of persons and teams responsible for these metrics.

15. The identity, type, location, and organization of documents regarding the relation between the metrics in Topic No. 13 and Defendants' revenues, costs, and profits for the Accused Products.

16. The identity, type, location, and organization of documents regarding how the availability of Sign-On-Services in the Accused Products affects the metrics listed in Topic 13.

17. The identity, type, location, and organization of documents regarding Zynga's use of optimization techniques, including latency testing, A/B testing, user targeting, customer classification, customer segmentation, multi-variate experimentation, customized tuning, and Zynga's "Experimentation and Optimisation Service."

18. The identity of persons and teams responsible for Zynga's optimization techniques described in Topic No. 17.

19. The identity, type, location, and organization of documents regarding the relation between Zynga's optimization techniques described in Topic No. 17 and Defendants' revenues, costs, and profits for the Accused Products.

20. The identity, type, location, and organization of documents regarding benefits or advantages of the Accused Products, including:

    a. Identification Services;

    b. Ad Services;

    c. any functionalities involving downloading, loading, storing, caching, precaching, prefetching, or preloading of Advertisements (including any benefits or advantages related to latency or loading times);

    d. any functionalities involving targeting, segmenting, or classifying customers for delivering or presenting Advertisements;

3

    e.  Sign-On-Services;

    f.  client-side and/or server-side authentication of player inputs, player data, or player game state in the Accused Products;

    g.  client-side and/or server-side Model-View-Controller architecture;

    h.  client-side and/or server-side Model-View-ViewModel architecture.

21.    The identity, type, location, and organization of marketing documents related to the Accused Products, including advertisements, promotional materials, press releases, advertisements, presentations, product launch documents, catalogues, trade show exhibits or displays, photographs, video clips, electronic clips, videotapes, data sheets, specifications, price lists, brochures, product literature, product demonstrations, and any other materials describing the features of each of the Accused Products.

22.    The identity, type, location, and organization of documents regarding any market study, commercial study, or user experience study related to any Accused Products.

23.    The identity, type, location, and organization of documents regarding Defendants' patent licensing policies, practices, procedures, and programs, license agreements, assignments, grant of rights, or other agreements concerning any Accused Product.

24.    Defendants' efforts to identify, collect, and produce documents described in Topics No. 11-23, including documents containing financial information, metrics, optimization techniques, the benefits or advantages of the Accused Products, marketing documents, market studies, and licensing information, including the custodial and non-custodial sources searched and search methodology employed.

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION, | ) ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 22-590-GBW |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| ZYNGA INC., and CHARTBOOST, INC., | ) | **HIGHLY CONFIDENTIAL –** |
| | ) | **ATTORNEYS' EYES ONLY** |
| Defendants. | ) | |

## PLAINTIFF IBM'S FIRST RULE 30(B)(6) NOTICE OF DEPOSITION TO DEFENDANTS ZYNGA, INC. AND CHARTBOOST, INC.

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure and the Local Rules of this Court, Plaintiff International Business Machines Corporation ("IBM"), by its counsel, will take the deposition upon oral examination of Defendants Zynga Inc. and Chartboost, Inc. (collectively "Defendants") regarding the subject matter set forth in the attached Schedule B, which shall be interpreted in accordance with the definitions set forth in the attached Schedule A.

The deposition will take place on Friday, January 6, 2023, starting at 9:30 AM (EST), at the office of Desmarais LLP, 230 Park Avenue, New York, New York 10169, or at such other time and place as may be agreed upon in writing by the parties or ordered by the Court. The deposition will be taken before a Notary Public or other person authorized to administer oaths pursuant to Rule 28 of the Federal Rules of Civil Procedure, and will continue day to day until completed. The deposition will be recorded by audio, video, stenography, and/or real-time computer means.

In accordance with Rule 30(b)(6) of the Federal Rules of Civil Procedure, Defendants shall designate one or more officers, directors, managing agents, or other persons who consent to testify on their behalf as to each of the topics set forth in the attached Schedule B. IBM is available to

promptly confer with Defendants about the matters for examination in the attached Schedule B. *See* Fed. R. Civ. P. 30(b)(6) ("Before or promptly after the notice or subpoena is served, the serving party and the organization must confer in good faith about the matters for examination."). To that end, IBM requests that Defendants identify the individual(s) who will testify regarding each topic at least 7 calendar days before the noticed deposition.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By:  /s/ Bindu A. Palapura
David E. Moore (#3983)
John M. Desmarais                    Bindu A. Palapura (#5370)
Tamir Packin                         Hercules Plaza, 6th Floor
Jordan N. Malz                       1313 N. Market Street
Lindsey E. Miller                    Wilmington, DE  19801
Raymond N. Habbaz                    Tel:  (302) 984-6000
Benjamin Rodd                        dmoore@potteranderson.com
DESMARAIS LLP                        bpalapura@potteranderson.com
230 Park Avenue
New York, NY 10169                   *Attorneys for Plaintiff International Business*
Tel: (212) 351-3400                  *Machines Corporation*

Dated:  December 20, 2022
10505081 / 00311.00032

2

### SCHEDULE A
### DEFINITIONS

1.       As used herein, "Patents-In-Suit" means all patents asserted by IBM in this case now or in the future, including without limitation United States Patent No. 7,072,849 ("the '849 patent"), U.S. Patent No. 7,631,346 ("the '346 patent"), and U.S. Patent No. 7,702,719 ("the '719 patent").

2.       As used herein, "Accused Products" means any product, application, service, game, or method accused by IBM of infringing any claim of any of the Patents-In-Suit under any subsection of 35 U.S.C. § 271, including without limitation all products identified in IBM's May 2, 2022 Complaint; IBM's September 21, 2022 Preliminary Identification of Accused Products; and any amendments, supplements, or updates to any of the foregoing.  By way of example and not limitation, "Accused Products" includes: (1) Zynga's games, whether accessed through the Zynga websites, Zynga mobile applications, Zynga's SDKs, or other websites or applications; (2) Zynga's websites located at the URLs www.zynga.com and www.zyngagames.com, including the desktop version, mobile version, and affiliated websites; (3) Zynga's mobile applications, including Android and iOS Zynga mobile applications; (4) the Chartboost SDK; (5) the Chartboost cross-promotion campaign interface; and (6) the Chartboost website located at www.chartboost.com.

3.       As used herein, "Zynga" means Zynga Inc. and any predecessors, divisions, departments, subsidiaries, parents, affiliates, present or former officers, directors, employees, agents, counsel, representatives, and others authorized to act on behalf of Zynga Inc., and is inclusive of any other current or previous names for the corporate entity referred to as "Zynga."

4.       As used herein, "Chartboost" means Chartboost, Inc. and any predecessors, divisions, departments, subsidiaries, parents, affiliates, present or former officers, directors,

employees, agents, counsel, representatives, and others authorized to act on behalf of Chartboost, Inc., and is inclusive of any other current or previous names for the corporate entity referred to as "Chartboost."

5.      As used herein, "Defendants," "You," and "Your" means Zynga and Chartboost.

6.      As used herein, "Plaintiff" and "IBM" means International Business Machines Corporation.

7.      As used herein, "include" and "including" shall be construed to mean "without limitation," so as to acquire the broadest possible meaning.

8.      As used herein, "and" and "or" shall be construed conjunctively and disjunctively, so as to acquire the broadest possible meaning.

9.      As used herein, "any" and "all" shall each be construed to mean "each and every," so as to acquire the broadest possible meaning.

10.     The singular and masculine form of a noun or pronoun shall embrace, and shall be read and applied as, the plural or the feminine or neuter, as the particular context makes appropriate and to give the noun or pronoun the broadest possible meaning.

11.     As used herein, "document" has the same broad meaning as in Rule 34 of the Federal Rules of Civil Procedure.  The term "document" also encompasses tangible things.

12.     As used herein, "concerning" or "relating to" means, without limitation, identifying, describing, discussing, concerning, assessing, stating, reflecting, constituting, containing, embodying, tending to support or refute, or referring directly or indirectly to the particular subject matter identified.

13.     As used herein, "Complaint," "Answer," and "Affirmative Defense," shall mean the pleadings as originally filed or as amended or supplemented throughout the progression of the case.

14.     As used herein, "www.zynga.com" means the website located at www.zynga.com, as well as the domain of www.zynga.com.

15.     As used herein, "www.zyngagames.com" means the website located at www.zyngagames.com, as well as the domain of www.zyngagames.com

16.     As used herein, "www.chartboost.com" means the website located at www.chartboost.com, as well as the domain of www.chartboost.com

17.     As used herein, "Transaction Event(s)" means any revenue-generating event, including but not limited to user queries, search hit clicks, purchases (*e.g.*, purchases of virtual items or currency), subscriptions, pre-orders, completion of pre-orders (*i.e.*, pre-orders that are not cancelled), ad-related orders, ad-related purchases, advertisement impressions, or advertisement clicks.

18.     As used herein, "Advertisements" means all advertisements presented by the Accused Products, including without limitation, interstitial advertisements, banner advertisements, in-game advertisements for virtual goods, including in-game currency, and rewarded advertisements.

19.     As used herein, "Source Code" means any software, markup language files, style sheet language files, template language files, programming language files, configuration files, source code, object code, or other electronic information for directing the operation of a computer, mobile device, website, web browser or for processing electronic data, including but not limited to computer instructions and data definitions expressed in a form suitable for input to an assembler,

compiler, other translator, or other data processing module. This definition includes, but is not limited to, JavaScript, Java, Java Server Pages (JSP), Active Server Pages (ASP) (including .Net ASP), VBScript, C++, CPP, C, C#, Objective-C, Lua, PHP, Swift, Python, Mustache, CoffeeScript, Ruby, Kotlin, SQL or other query languages, PostScript, Jade, Apache Velocity Templates, HTML, CSS, XML, batch files, and shell scripts.

20.     As used herein, "Third-Party Platforms" means any platform besides Zynga or Chartboost, including but not limited to Facebook, Google, Google Play Games, Apple, and Apple Game Center.

21.     As used herein, "Confluence" refers to the collaboration software developed by Atlassian and used by You, including any related workspaces, collaborative environments, cloud-based software, data centers, and servers.

22.     As used herein, "Zynga User Account(s)" means those Zynga accounts that represent a user's identity or identify a user, allow users to authenticate, are used to secure game progress by connecting Zynga User Accounts to Zynga Game Accounts, are used to recover access to Zynga Game Accounts, and/or let Zynga identify a user across Zynga's games. *See* ZYNGA_IBM_0002802, ZYNGA_IBM_0002325.

23.     As used herein, "Zynga Game Account(s)" means those Zynga accounts that allow game clients to secure player progress by providing playerid and secure authentication mechanisms, are secured by frictionless logins (*e.g.*, Apple Game Center or Google Play Games) or secured by a Zynga User Account, and/or are used to identify player progress for a specific game. *See* ZYNGA_IBM_0002802, ZYNGA_IBM_0002325.

**SCHEDULE B**
**TOPICS**

1.    The identity, type, location,  and organization of technical documents and Source Code related to the Accused Products, including without limitation technical documents and Source Code that show how the Accused Products:

> a.  retrieve, fetch, select, generate, store, cache, transfer, process, manage, display, and/or present Advertisements;
>
> b.  collect, retrieve, fetch, store, and/or process information concerning Your users, and any use of that information to tailor and/or select Advertisements, whether direct or indirect;
>
> c.  allow for signing into, creating, linking, or updating user accounts or game accounts (*e.g.*, Zynga User Accounts or Zynga Game Accounts), including by using information or data about users from Third-Party Platforms;
>
> d.  process Transaction Events, including as part of signing into, creating, linking, or updating user accounts or game accounts (*e.g.*, Zynga User Accounts or Zynga Game Accounts), or as part of selecting Advertisements; and
>
> e.  employ a client-server approach to the architecture and programming of the Accused Products, including where a portion of the Accused Product's application's model-view-controller or other data is maintained on the client and a portion of the Accused Product's application's model-view-controller or other data is maintained on the server.

2.    The identity, type, location, and organization of technical documents and Source Code that show the topology of the networks that deliver content relevant to, or otherwise support, the Accused Products.

3.    The identity, type, location, and organization of technical documents and Source Code that show the architecture of the servers and client devices that store and execute the application data used by the Accused Products, including the portions of an application identified or characterized as its model, view, or controller.

4.    The identity, type, location, and organization of technical documents and Source Code that show the control panels, consoles, dashboards, and interfaces related to configuring any

parameters involved in caching and/or configuring content delivery networks services related to the Accused Products.

5.     The identity, type, location, and organization of documents that identify and describe the updates, releases, and/or version changes to the Accused Products.

6.     The identity, type, location and organization of the "Documents, Electronically Stored Information, and Tangible Things" identified in Defendants' September 1, 2022 Rule 26(a) initial disclosures, and any amendments, supplements, or updates thereto.

7.     The identity, type, location, and organization of Your non-custodian sources of documents and data relating to the Accused Products, including but not limited to the "Non-Custodian Data Sources" identified in Defendants' September 26, 2022 ESI Disclosures and any amendments, supplements, and updates thereto, as well as any other repositories (*e.g.*, Internal Wikis, Google Docs, Confluence pages).

8.     Defendants' efforts to identify, collect, and produce technical documents and Source Code related to the Accused Products, including the custodial and non-custodial sources searched and search methodology employed.

## CERTIFICATE OF SERVICE

I, Bindu A. Palapura, hereby certify that on December 20, 2022, true and correct copies

of the within document were served on the following counsel of record at the addresses and in

the manner indicated:

## VIA ELECTRONIC MAIL

Brian E. Farnan
Michael J. Farnan
Farnan LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Clement S. Roberts
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
croberts@orrick.com

Alyssa Caridis
Jake O'Neal
Orrick, Herrington & Sutcliffe LLP
777 South Figueroa Street Suite 3200
Los Angeles, CA 90017
acaridis@orrick.com
jake.oneal@orrick.com

Evan D. Brewer
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025
ebrewer@orrick.com

Richard F. Martinelli
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, New York 10019
rmartinelli@orrick.com

Geoffrey Moss
Orrick, Herrington & Sutcliffe LLP
355 S. Grand Ave., Ste. 2700
Los Angeles, CA 90071
gmoss@orrick.com

_/s/ Bindu A. Palapura_
Bindu A. Palapura

10111670 / 52900

9

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

# EXHIBIT 3



www.desmara s p.com

**NEW YORK**

**SAN FRANCISCO**

**WASHINGTON, DC**

Ca tr anne Fedde er
New York
D rect: 212-808-1041
cfedde er@desmara s p.com

March 15, 2023

**Via E-Mail**

Geoffrey Moss
Orrick, Herrington & Sutcliffe LP
355 South Grand Ave.
Suite 2700
Los Angeles, CA 90071

> Re:   *International Business Machines Corp. v. Zynga Inc. and Chartboost, Inc.*,
> Civil Action No. 22-cv-590-GBW (D. Del.)

Counsel:

I am writing regarding several deficiencies in Zynga's productions to date and its failure to adequately prepare its corporate representative to testify in response to IBM's 30(b)(6) deposition notice, dated December 20, 2022 ("IBM's Deposition Notice").

*First*, Zynga's corporate representative (Mr. Patrick Mok) confirmed during his March 9, 2023, deposition that there were several categories of core technical documents showing how the Accused Products[1] work that ***Zynga still has not produced in this litigation***. Mr. Mok's testimony raises serious concerns regarding Zynga's February 1, 2023, representation that it completed its core technical document production in compliance with the Court's Dec. 2, 2022 Order (D.I. 78).

For example, the evening prior to Mr. Mok's deposition, Zynga provided IBM with a summary allegedly prepared by Mr. Mok reflecting facts he learned in preparation to give 30(b)(6) testimony on behalf of Zynga. *See* Mar. 8, 2023 Email from Mr. Moss; Mok Dep. Ex. 1. That summary makes clear that architectural documents exist for many of the Accused Products and accused functionality (*Empires & Puzzles*, *Game of Thrones Slots*, *Wizard of Oz Slots*, *Harry Potter: Puzzles and Spells*, *CSR Racing 2*, *Merge Dragons!*, *Words with Friends 2*, *Farmville 2: Country Escape*, *Zynga Poker*, *Golf Rival*, ZADE, ChartBoost) that Zynga and ChartBoost have not produced in this litigation. *See, e.g.*, Mok Dep. Ex. 1. Indeed, Mr. Mok confirmed that those documents exist and further admitted that several entries in his summary that state Zynga is "not aware of any" "[d]ocuments related to architecture" are, in fact, incorrect because Zynga is aware of them and has not produced them to date. *See, e.g.*, Mok Dep. Rough Tr. at 85:22- 25 ("Q. [T]here are in fact documents relating to the architecture for Empires & Puzzles, right? A. I believe so, yes."); 89:2- 23 ("Q. [J]ust to confirm, there are documents related to architecture for Golf

---

[1] As used herein, "Accused Products" has the same meaning as IBM's Initial Infringement Contentions dated Feb. 28. 2023.



www.desmara s p.com

Rival, right? A. Yes."); 86:20‑24 ("Q. So when you say that you're not aware of any documents related to architecture in the lower row, that's not correct, right? [A.] You're correct.).

As another example, Mr. Mok confirmed that Zynga maintains recordings from technical presentations for at least the following Accused Products that Zynga has not produced in this litigation: *Wizard of Oz Slots*, *CSR Racing 2*, *Farmville 2: Country Escape*, *Game of Thrones Slots*, and ZIS.  *See, e.g.*, Mok Dep. Ex. 1; Mok Dep. Rough Tr. at 46:22‑25 ("Q. Those Zoom recordings are technical documents about how FarmVille Country Escape works, right? A. To my knowledge, yes."), 56:4‑8, 60:15‑21("Q: Okay.  But looking at Exhibit 5, which is the Game of Thrones Slots WIKI page, it provides a link to a technical video for Games of Thrones Slots, right? A. It does.").

As another example, Mr. Mok confirmed that for the Accused Products, Zynga maintains wire maps and wireframe diagrams that illustrate the architecture layout and user interface that Zynga has not produced in this litigation.  *See, e.g.*, Mok Dep. Ex. 1; Mok Dep. Rough Tr. at 30:5‑23; 31:1‑32:14.

As another example, Mr. Mok confirmed that for the Accused Products, Zynga maintains "readme" and "how-to" files in GitHub that are separate from source code files that Zynga has not produced in this litigation.[2]  *See, e.g.,* Mok Dep. Rough Tr. at 33:12‑16 ("Q. So the READMEs or how-tos, those are separate files from the source code files, right? A. I believe so.").

Please immediately produce the documents identified by Mr. Mok during his deposition, including the documents identified above and in Ex. 1 to his deposition.  Additionally, please confirm Zynga is not withholding any other documents that Zynga identified in Ex. 1 to Mr. Mok's Deposition or otherwise show how the Accused Products work.  If Zynga contends that it has produced these documents, please identify them by Bates number.

***Second***, Zynga still has not produced a number of core technical documents showing how the Accused Products work that are ***explicitly referenced in produced documents***, including but not limited to the following:

- The Google Docs discussed in ZYNGA IBM 0002408 at -440, including an "Architecture Document" and a "Glossary";
- The Google Docs discussed in ZYNGA IBM 0002321 at -350, including a "Security Model" and an "Escalation Path";
- The Google Docs discussed in ZYNGA_IBM_0003882 at -926, including "Frictionless Auth";

████████████████████████████████████████

---

[2] To the extent Zynga is asserting that "readme" and "how-to" files that are separately stored from source code in these repositories are "Source Code" under the Protective Order in this case, please provide your basis for that contention.

DESMARAIS LLP
www.desmaraisp.com

- The Google Docs discussed in ZYNGA_IBM_0002605, including "Super High Level Overview";
- The Google Docs discussed in ZYNGA_IBM_0002782 at -790 91, including a "GWF Concerns and Tasks Doc," "ZIS Generic Wireframes," and "ZIS UX flows";
- The "ZIS API" and "Identities Draft 6 Architecture Review" discussed in ZYNGA_IBM_0002782 at -097;
- The links, such as "Existing W2E stats," linked in ZYNGA_IBM_0002705 at -714 and -715;
- The Supporting Documents, such as "Zynga Identity Service documentation," linked in ZYNGA_IBM_0002800 at -803;
- The "Quick links" and "Android / iOS / Unity Integration Guides" discussed in ZYNGA_IBM_0002814 at -814;
- The "Helpful Links" and "Documentation and Help," links linked in ZYNGA_IBM_0002981 at -981;
- The Architecture Reviews links, including "Rewardables" document, linked at ZYNGA_IBM_0003039 at -039- 040;
- The slides linked in ZYNGA_IBM_0005553;
- The "FVCE Game Overview" presentation linked in ZYNGA_IBM_0005723;
- The Wiki on the procedure for cloning/importing a new game referenced in ZYNGA_IBM_0003521;
- The JIRA reports linked in, for example, ZYNGA_IBM_0025361;
- The documents discussed in ZYNGA_IBM_0026809 at -013, -022, -027, -041, including, but not limited to, "Levels / Regions / Paths - main data structure of Zynga games' Match3 puzzle";
- The Google Docs discussed in ZYNGA_IBM_0032342, including "CSR Design Knowledge Transfer";
- The report linked in ZYNGA_IBM_0001885 regarding "Attributes available through userdata."; and

Please immediately produce the documents identified above.  Additionally, please confirm Zynga is not withholding any other documents that Zynga identified in IBM's January 30, 2023 Email from Ms. Feddeler.  To the extent Zynga contends that it has produced any of the documents identified above, please identify them by Bates number.

*Third*, at least the following documents produced by Zynga are illegible, meaning they contain illegible text, are missing all or portions of diagrams, and/or are unsupported file types.  Please reproduce legible versions of at least the following documents:

DESMARAIS LLP

www.desmara s p.com

- ZYNGA_IBM_0000520
- ZYNGA_IBM_0001820
- ZYNGA_IBM_0001823
- ZYNGA_IBM_0001827
- ZYNGA_IBM_0001834
- ZYNGA_IBM_0001856
- ZYNGA_IBM_0001869
- ZYNGA_IBM_0001882
- ZYNGA_IBM_0001886
- ZYNGA_IBM_0001889
- ZYNGA_IBM_0001992
- ZYNGA_IBM_0002097
- ZYNGA_IBM_0002151
- ZYNGA_IBM_0002321
- ZYNGA_IBM_0002408
- ZYNGA_IBM_0014125   ZYNGA_IBM_0019927 (Unsupported or excluded file types)
- ZYNGA_IBM_0028924
- ZYNGA_IBM_0051376

*Fourth*, Zynga has not made available for inspection source code modules and/or directories relevant to the functionality of the Accused Products, including at least the following:





Please immediately make the above identified source code modules and/or directories available for inspection.

**Finally**, Zynga's corporate representative, Mr. Mok, was wholly unprepared to testify regarding Topics 1- 5 of IBM's Deposition Notice.

For example, during the deposition, Mr. Mok admitted on multiple occasions that the summary chart that he allegedly prepared and was provided to IBM by Zynga's counsel the night before his deposition (Mok Dep. Ex. 1) was neither accurate nor comprehensive. *See, e.g.,* Mok Dep. Rough Tr. at 59:9- 60:6 ("Q. So is it fair to say that this Exhibit 1 summary chart is not necessarily comprehensive? A.   It is possible."); 86:17- 24 ("Q. So there are architecture documents for CSR2, right? A.  Yes.  Q. So when you say that you're not aware of any documents related to architecture in the lower row [of Exhibit 1], that's not correct, right? A. You're correct.").

As another example, Mr. Mok was unprepared to testify regarding any of the advertising services or identification services that are at issue in this case.  This was particularly concerning because Zynga proposed representative games based on those services. *See, e.g.*, Oct. 17, 2022 Email from Mr. Moss (grouping accused games for the '849 Patent based on the advertising services, such as AdMob, and grouping accused games for the '346 Patent based on the identification service); *see also* Nov. 30, 2022 Email from Mr. Moss (identifying a description of each ID Service used to categorize each representative game).  When preparing for Topics 1(a)-(d), 2, and 4 of IBM's Deposition Notice, which pertain directly to the Accused Products' advertising and identification, Mr. Mok admitted that he did not ask any Zynga employee about the existence of documents for those advertising and identification services.  As just one example, Topic 1(a) relates to technical documents that show how the Accused Products "retrieve, fetch, select, generate, store, cache, transfer, process, manage, display, and/or present Advertisements."

DESMARAIS LLP
www.desmarais p.com

*See* IBM's Deposition Notice.  For *Empires & Puzzles*, Mr. Mok noted that he was "not aware of any" documents relating to advertisements.  *See, e.g.*, Mok Dep. Ex. 1.  But Mr. Mok failed to ask anyone at Zynga whether there were documents on the Helium advertising service, which Zynga has represented it utilizes to retrieve and present advertisements in *Empires & Puzzles*. *See, e.g.*, Mok Dep. Rough Tr. at 51:8‑16 ("Q. Did you ask anyone at Zynga whether there are documents on the Helium ad service? A. No. Not specifically.  Q. And is that the same answer for each ad service that Zynga uses? A. Yes.").  Similarly, Topic 1(c) relates to technical documents that show how the Accused Products allow for signing into, creating, linking, or updating user accounts or game accounts (*e.g.*, Zynga User Accounts or Zynga Game Accounts), including by using information or data about users from third-party platforms.  For *Spades Plus*, Mr. Mok noted that he was "not aware of any" documents related to signing into, creating, linking, or updating user accounts, including using information from third-parties.  *See, e.g.*, Mok Dep. Ex. 1.  But Mr. Mok failed to ask whether Zynga had documents relating to the Custom Peak ID Service, which Zynga has represented *Spades Plus* utilizes to allow users to sign-in to, create, link, and update user accounts in *Spades Plus*.  *See, e.g.*, Mok Dep. Rough Tr. at 92:13‑19 ("Q. When you spoke with the individuals for Spades Plus, did you ask any questions about what documents Zynga has relating to the Custom Peak ID service?  A. I did not."); *see also id.* at 90:15‑94:14 (providing the same answer for the identification service used by each representative game).

As another example, despite the definition of "Advertisements" in Paragraph 18 of IBM's Deposition Notice including advertisements for virtual goods, Mr. Mok was unprepared to answer questions specifically relating to documents Zynga maintains that show how advertisements for virtual goods work in the Accused Products.  *See, e.g.*, Mok Dep. Rough Tr. at 82:7‑83:3 ("Q. So you never specifically [] clarified with the individuals that[] the definition of advertisement included advertisements for virtual goods. A. [I] did not.  Q. And you didn't ask any specific questions about advertisements for virtual goods? Right?  A. No, I didn't.").  For example, when asked "[w]here are the documents stored or what documents are there that show how Zynga's games present advertisements for virtual goods?," Mr. Mok responded "I think what I have listed for ZADE is as far as I know."  *Id.* at 80:9‑16.  This answer, if true, fails to address any documents regarding how the Accused Products that do not use ZADE "retrieve, fetch, select, generate, store, cache, transfer, process, manage, display, and/or present" virtual goods.[3]

\* \* \*

Zynga's repeated delays in producing core technical documents that show how the Accused Products work and failure to adequately prepare its corporate representative in response to IBM's Deposition Notice has significantly prejudiced IBM's ability to prosecute its case.  Zynga's core technical document production was due November 3, 2022, over four months ago.  D.I. 39 at § 9(b).  After Zynga failed to meet this deadline, IBM sought relief from the Court and, on December

---

[3] IBM reserves the right to seek an additional deponent (or deponents) to properly address Topics 1‑5 from IBM's Deposition Notice and seek any further relief from the Court based on Zynga's failure to adequately prepare its corporate designee to testify on behalf of Zynga.



www.desmaraisllp.com

2, 2022, the Court ordered Zynga to produce "source code and other core technical documents for all of the accused products in this action, including but not limited to non-publicly available operation manuals, product literature, schematics, and specifications that sufficiently show how the accused products work." D.I. 78. Two months after the Court's Order and three months after the deadline required by the Scheduling Order, Zynga represented that it completed its core technical document production on February 1, 2023. To ensure Zynga's compliance with the Court's Order, IBM served its Deposition Notice regarding Zynga's core technical documentation on December 20, 2022. Zynga delayed providing a witness in response to IBM's deposition notice for over two months. And, when Zynga did make a witness available, he was unprepared and confirmed that Zynga did not produce several categories of core technical documents despite Zynga's representations to the contrary.

Zynga must rectify these deficiencies without further delay. If Zynga is unwilling to address the deficiencies outlined in this correspondence, pursuant to Delaware Local Rule 7.1.1, please provide your availability to meet-and-confer (including with Delaware counsel) before March 22, 2023, so that IBM can bring any outstanding issues to the prompt attention of the Court. IBM reserves all rights in connection with Zynga's discovery conduct in this case.

Sincerely,

*/s/ Caitrianne Feddeler*
Caitrianne Feddeler