

January 17, 2024

**VIA E-FILING**
The Honorable Gregory B. Williams
J. Caleb Boggs Federal Building
844 N. King Street
Unit 26, Room 6124
Wilmington, DE 19801

RE:   ***International Business Machines Corporation v. Zynga Inc., et al.***
      **C.A. No. 22-cv-590-GBW**

Dear Judge Williams:

IBM asks this Court to re-write a provision of the Scheduling Order (D.I. 89) that IBM itself proposed. IBM's proposal disproportionality impacts Zynga and should be rejected. Instead, if the Court wishes to impose numerical limits at all, it should require IBM to narrow to five (5) asserted claims from each patent and Zynga to narrow to sixteen (16) "invalidity references"[1] for the '849 Patent and eight (8) "invalidity references" for the '719 Patent.

**I.      Zynga's Proposal is Reasonable and Consistent with the Scheduling Order.**

On July 13, 2022, Magistrate Judge Fallon ordered the parties to "file a proposed scheduling order" consistent with a form scheduling order available on the Court's website. *See* 07/13/2022 Oral Order. On July 20, 2022, the parties held a Rule 26(f) conference in which "***IBM [not Zynga] proposed narrowing the asserted claims and references*** at some point during the case." Ex. 3 at 2. IBM then sent Zynga a proposed scheduling order in which IBM included a "Narrowing Issues" provision that required IBM to narrow "the number of asserted claims" and Zynga to narrow "the number of asserted invalidity references." Ex. 4 ¶ 10. IBM's proposal was adopted in both the Original (D.I. 39) and Amended (D.I. 89) Scheduling Orders. At no point during negotiations did IBM propose that Zynga should narrow its "invalidity theories."

On December 29, 2023, unhappy with the Court-ordered provision, IBM proposed that it narrow to "8 claims per asserted patent" and Zynga narrow to "10 invalidity theories per asserted patent." Ex. 5 at 3-4. In the interest of compromise, Zynga countered that "if IBM commits to narrow to 8 claims per patent, [Zynga] can commit to narrow . . . to 16 references for the '849 [Patent] and 8 references for the '719 [Patent]." *Id.* at 2. Zynga alternatively proposed proceeding

---

[1] The Court should adopt the following definition of "invalidity reference": a document (e.g., a patent or printed publication) or an instrumentality (such as a device or process). Documents (such as source code, architecture documents, contracts, and press releases) describing or corroborating the functionality and prior-art status (e.g., sale/offer for sale) of a single instrumentality shall collectively count as one "invalidity reference" (e.g., various documents on which Zynga will rely to support an on-sale bar defense). Indeed, IBM substantively agreed with this definition in *Expedia*. *See* Ex. 1 at 3; Ex. 2 at D.I. 163.

"without numeric[al] requirements . . . and to meet and confer at the end of [January] to discuss" whether the parties sufficiently narrowed. *Id.* IBM refused both of Zynga's counters. *Id.* at 1-2.

Zynga's current proposal for IBM to narrow to five claims from each patent and Zynga to narrow to sixteen references for the '849 Patent and eight references for the '719 Patent (i.e., an average of twelve references per patent) adheres to the language of the Court's Scheduling Order and reasonably narrows the issues before expert reports are due. *See, e.g.*, *SK Innova. Co., v. LG Chem, Ltd.*, No. 19-cv-1637-CFC-SRF, Oral Order (D. Del. Sept. 10, 2020) (ordering, by close of fact discovery, three claims and eight references for one patent). Moreover, IBM's offer to narrow to eight claims per patent is a "narrowing" in name only for one of the asserted patents. IBM asserts only four claims from the '719 Patent. Thus, its offer to narrow to eight claims does nothing. Zynga's proposed reduction of invalidity references, on the other hand, meaningfully reduces the number of invalidity references currently identified for each asserted patent.

Finally, Zynga's "agreement" that IBM should narrow to eight claims per patent (IBM Op. at 1) was made in the interest of compromise. But IBM refused. Narrowing to five claims, rather than eight, is consistent with the claim reduction approach taken in *Expedia*, which was ordered by the same court as *Priceline* three years later and found that the reduction "should be slightly more aggressive than in the Priceline [litigation]." Ex. 2 at D.I. 163 ("5 from any one patent").

## II.    IBM's Proposal is Overly Restrictive and Inconsistent with the Scheduling Order.

IBM does not dispute that the Court's Scheduling Order requires a "Narrowing of Invalidity References" (*see* IBM Op. at 1) or that it requires Zynga to narrow "the number of asserted invalidity references" (D.I. 89 ¶ 13). Instead, IBM now argues that the terms "invalidity reference" and "invalidity theory" are synonymous. *See* IBM Op. at 1. Nonsense. A "reference" is a piece of prior art (as set forth, *supra*, in n.1), and a "theory" is anticipation over a single reference or obviousness over one or more references.[2] Indeed, IBM expressly acknowledged the difference in 2019, when it jointly defined with defendants in *Expedia* the distinct terms "invalidity reference" and "invalidity theory." Ex. 1 at 3. IBM also never suggested that these terms were synonymous when the parties negotiated the scheduling orders in this case or in the meet-and-confer and correspondence that led to this dispute. *See, e.g.*, Ex. 5 at 1-2 (asking Zynga if it was "willing to agree to a limitation on 'theories' instead of 'references'…").

IBM attempts to justify its eleventh-hour argument because, according to IBM, "several other cases in this District concerning the '849 Patent . . . require[d] the Defendants . . . to narrow [] 'invalidity theories.'" IBM Op. at 2 (citing *Priceline* and *Expedia*). But again, in ***this*** case, IBM proposed, and the parties agreed to, a narrowing of ***references***, not theories. In contrast, in

---

[2] IBM states that, in *Priceline*, the court "limited defendant to specific invalidity theories . . . where a theory was," *inter alia*, "another specific theory that the asserted claims are invalid (e.g., for lack of enablement or written description)." IBM Op. at 1 n.1 (citing *Priceline*, No. 15-cv-137-LPS-CJB, D.I. 65 at 10 n.3 (D. Del. Feb. 25, 2016) (Ex. 6)). ***That is false***. In the cited order, the court never mentions "enablement or written description" or any other theories apart from those under 35 U.S.C. §§ 102 and 103. Ex. 6 at 10 n.3. IBM's blatant overreach to include other theories in the definition of "invalidity theory" is overly restrictive, prejudicial, and inconsistent with how IBM defined "invalidity theory" in *Expedia*. Ex. 1 at 2-3. "Theory" should only include §§ 102 and 103.

*Priceline*, the parties filed a proposed scheduling order with disputed issues regarding how each party should narrow. Ex. 6 ¶ 12. There, IBM proposed narrowing by "invalidity theories," and defendants proposed narrowing by "references." *Id.* No such disputed issues existed here. D.I. 89 ¶ 13. Similarly, in *Expedia*, defendants "agreed to . . . limit[] 'invalidity theories'" as opposed to "invalidity references." Ex. 1 at 6 n.1. Zynga has made no such agreement. Moreover, *just last year*, IBM agreed that narrowing by "prior art references" for the '849 Patent was sufficient. *Int'l Bus. Machs. Corp. v. Rakuten, Inc.*, No. 21-cv-461-GBW, D.I. 373 at 2 (D. Del. June 21, 2023); *see also Int'l Bus. Machs. Corp. v. Groupon, Inc.*, No. 16-cv-122-LPS, D.I. 314 at 7 (D. Del. June 15, 2018) (ordering defendant to narrow by "prior art references" for the '849 Patent).

Finally, as a last-ditch effort, IBM argues throughout its letter that even if the language of the Scheduling Order supports Zynga's position (which it does), the Scheduling Order "was entered long before Zynga had provided invalidity contentions" and Zynga's "refusal to limit the number of invalidity theories . . . leav[es] a staggering number of obviousness combinations in the case that must be addressed during expert discovery." IBM Op. at 1, 2.[3] IBM misses the mark. Zynga's invalidity contentions have no bearing on the language of the "Narrowing Issues" provision that the parties negotiated and the Court ordered. If IBM had any complaints with respect to the number of obviousness combinations in Zynga's invalidity contentions, IBM should have moved to compel supplemental contentions or should have moved to amend the "Narrowing Issues" provision. Instead, IBM failed to do so and now attempts to circumvent the "good cause" requirement for amending the scheduling order using this dispute. *See* Fed. R. Civ. P. 16(b)(4). In any event, Zynga's proposal will undoubtedly reduce the number of combinations that Zynga can assert. And Zynga has already committed "to further narrow [] prior art references following IBM's narrowing of its asserted claims" because "this case needs significant narrowing (by both sides)." Ex. 5 at 1.

*      *      *

Accordingly, the Court should adopt Zynga's proposal.[4]

Respectfully submitted,

*/s/Brian E. Farnan*

Brian E. Farnan

cc: Counsel of Record (via E-Filing)

---

[3] IBM's selective citations to Zynga's invalidity contentions also paint a distorted picture. In its Final Invalidity Contentions, Zynga articulated specific combinations in its claim charts that it intended to preserve. *See, e.g.*, Ex. 7 (Solomon Chart) at 5-10, 15-21, 27-31, 38-44 (detailing specific combinations); Ex. 8 (Hurly Chart) at 22-24, 31-32, 38-43, 48-53 (same). Far from "thousands" of possible combinations, these combinations are reasonable and expressly disclosed.

[4] To the extent the Court agrees with IBM that "invalidity theories" should be used here, the far more apt case to follow would be *Expedia* given that it was more recent than, and in light of, *Priceline*. There, the court ordered that, by final contentions, (1) IBM must narrow to no more than five claims per patent, and (2) defendants must narrow to no more than sixteen invalidity theories per patent. Ex. 2 at D.I. 163. Those numerical limits make more sense here than IBM's proposal.

3