IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTERNATIONAL BUSINESS MACHINES CORP., | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. 22-590-GBW ) ) **PUBLIC VERSION** |
| ZYNGA INC. and CHARTBOOST INC., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND SPECIAL MASTER ORDER #2

Plaintiff International Business Machines Corp. (IBM) moves to compel discovery from Defendants Zynga Inc. and Chartboost Inc. (together, Zynga) on three grounds:

(1) IBM moves to compel Zynga to produce notes taken by Zynga's employees during development of the accused Toy Blast and Toon Blast games;

(2) IBM moves to compel Zynga to produce load time studies for the accused games; and

(3) IBM moves to compel Zynga to provide an additional witness on topics 6(c) and 64 of IBM's Rule 30(b)(6) notice.

At my direction, IBM submitted a motion to compel and proposed order, each side submitted a six-page, double-spaced brief on the issues, and I held a one-hour, transcribed video hearing with the parties on January 18, 2024. Based on the arguments in the briefs, the cited exhibits, and the arguments made at the hearing, I will grant-in-part and deny-in-part the relief sought by IBM, as described below.

**I.     IBM's motion to compel Zynga to produce notes taken by Zynga's employees during development of the accused Toy Blast and Toon Blast games**

IBM wants Zynga to produce notes taken by Zynga's software developers during development of the accused Toy Blast and Toon Blast games. Zynga's Rule 30(b)(6) designee

on these games, Mr. Gezeroglu, testified that he took notes at development meetings relating to these games, he saved the notes to his computer, and others at the meetings likely took notes as well. IBM argues that production of these notes is particularly important in this case because Zynga has produced no technical documents about the Toy Blast and Toon Blast games other than the source code for the games. Zynga argues that production of the notes is not proportional to the needs of the case and that IBM has not shown that the notes are relevant.

This dispute has some history. At the beginning of discovery, IBM moved to compel Zynga to produce technical documents about the accused games in addition to the source code for the games that Zynga had already agreed to produce. Zynga argued that producing its source code should be sufficient. The Court agreed with IBM and ordered Zynga to "produce source code and other core technical documents for all of the accused products in this action, including but not limited to non-publicly available operation manuals, product literature, schematics, and specifications that sufficiently show how the accused products work." D.I. 78.

I find that IBM has satisfied its initial burden of establishing the relevance of the notes and find Zynga's arguments on relevancy unpersuasive.[1] Notes taken by the software developers during the development process may well contain relevant evidence about the functionalities of the software. Zynga argues that the notes may not contain relevant information. Even if true,

---

[1] A party who has received incomplete discovery responses may move for an order compelling discovery. Fed. R. Civ. P. 37(a)(1), (4). A party moving to compel discovery bears the initial burden of establishing the relevance of the requested information. *Morrison v. Phila. Hous. Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001). The burden then shifts to the resisting party to show that "the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *First Sealord Sur. v. Durkin & Devries Ins. Agency*, 918 F. Supp. 2d 362, 383 (E.D. Pa. 2013) (quoting *McConnell v. Canadian Pac. Realty Co.*, 280 F.R.D. 188, 193 (M.D. Pa. 2011)).

this misses the point. It is impossible to know whether documents contain relevant information until someone looks at them. IBM has established that the notes are likely to contain relevant evidence. That is enough to require their collection and review. *See, e.g.,* D. Del. Default Standard for Discovery at 3 (requiring the parties to discuss *likely* sources of potentially relevant information and to disclose custodians and data sources most *likely* to contain discoverable information).

As to Zynga's proportionality argument, that can be dealt with by limiting the scope of the collection and production. IBM's motion requested that Zynga collect and produce notes from all of the Zynga employees involved in the development of the Toy Blast and Toon Blast games. At the hearing, however, IBM's counsel agreed with me that limiting the collection to Mr. Gezeroglu and Berkay Tarim, the head of development for the Toy Blast and Toon Blast games, would be sufficient. That is the scope of collection I will order. I do not think the burden of this collection will be great. In any event, the burden is more than balanced out by the other relevant factors set forth in Rule 26(b)(1), including the fact that no other technical documents exist (except the source code) and the representation made at the hearing about the amount in controversy.

**II.   IBM's motion to compel Zynga to produce load time studies for the accused games**

IBM wants Zynga to produce load time studies for the accused games. IBM argues that Zynga's Rule 30(b)(6) designee, Mr. Erenturk, testified on pages 371 and 372 of his deposition transcript that the studies exist. IBM also argues that the documents are relevant to IBM's reasonable royalty damages calculation because they will shed light on how quickly the accused games load on account of the pre-fetching of advertisements, which is a claimed feature, and thus the documents will shed light on the value of that feature.

3

Zynga argues that IBM's limited and vague examination of Mr. Erenturk fails to establish the relevance of the studies. While I agree that the examination of Mr. Erenturk on this subject could have been clearer, I find it clear enough to justify collection of the studies to see if they relate to the accused games. Similar to the development notes discussed above, I believe IBM has established a likelihood that the studies referenced by Mr. Erenturk contain relevant evidence. I also find that the burden of collecting and reviewing the load time studies referenced on pages 371 and 372 of Mr. Erenturk's deposition transcript would be slight and is reasonable and proportionate to the needs of this case. For these reasons, I will order that Zynga collect the load time study documents and produce any of the documents that relate to the accused games.

**III.    IBM's motion to compel Zynga to provide an additional witness on topics 6(c) and 64 of IBM's Rule 30(b)(6) notice**

IBM takes issue with two aspects of the Rule 30(b)(6) deposition testimony of Zynga's designee and Chief Technology Officer, Mr. Erenturk. First, relying on topic 6(c) of its notice, IBM argues that Mr. Erenturk was unable to confirm that the Merge Dragons and Merge Magic games accused of infringement implement the feature of displaying offers based on user attributes. IBM cites to passages of Mr. Erenturk's deposition transcript where he testified that the games have certain capabilities, but he was not sure whether certain capabilities were enabled in the actual games played by users. Second, relying on topic 64 of its notice, IBM argues that Mr. Erenturk was unable to testify about the value or benefits of targeted advertising in the Merge Dragons and Merge Magic games.

Zynga argues that Mr. Erenturk was reasonably prepared on these topics and provided adequate testimony, citing pages 132-37 and 289-90 of this deposition transcript as examples of the adequate testimony provided. Zynga also correctly notes that a Rule 30(b)(6) designee is not required to know and testify about every detail of every subject. This is especially the case here,

Zynga argues, because Zynga told IBM before the deposition that its witness would not be prepared to testify about every test or experiment that Zynga had conducted on its functionality.

As to topic 6(c) on how Zynga compiles, tracks, and uses user data to select, tailor, or target offers, I find that Mr. Erenturk provided adequate testimony under the circumstances. He provided testimony on this topic on pages 132-37 of his deposition transcript. IBM wants more. But Rule 30(b)(6) requires that the noticing party "describe with reasonable particularity the matters for examination." I find topic 6(c) lacking in particularity. I do not think it is fair to expect the designee to testify about every aspect of every document touching on the noticed topic. Here, the specific document that IBM used to question Mr. Erenturk, Exhibit 15 (Ex. O to Zynga's brief), was not identified in the noticed topic, topic 6(c), or otherwise called out to Zynga before the deposition. This is significant because IBM specifically called out other documents by Bates number in other topics when it wanted testimony on a particular document. *See, e.g.,* IBM's Ex. F at Topics 65, 67, 69-72, and 76.

I also note that IBM's counsel admitted in pre-deposition correspondence that IBM was "not asking the witness to be prepared to testify about each experiment." Ex. P to Zynga's brief at 2. While the parties vigorously disputed at the hearing whether the testimony sought regarding Exhibit 15 was about "experimentation" or something else, Zynga's pre-deposition correspondence at the very least put IBM on notice that the scope of its topics about this software functionality was potentially overbroad. And IBM could have—but did not—then set forth the matters for examination with greater specificity. This tends to undercut IBM's request for relief.

As to topic 64 on the value or benefits of targeted advertising in Merge Dragons and Merge Magic, I again find that the witness provided adequate testimony. At the hearing, I expressed concern that topic 64 did not even cover the testimony sought by IBM. IBM's

counsel, however, represented that before the deposition the parties had agreed on a scope that included the value or benefits of targeted advertising. At my request, IBM's counsel submitted an email exchange between counsel (labeled as Ex. Q) that for the most part supports counsel's representation at the hearing. To wit, on page 7 of the email exchange, Zynga agreed to designate a witness in response to topic 64 to "provide non-privileged testimony on the factual underpinnings of any value or benefit of the functionalities that are specifically accused of infringing the asserted patents in IBM's infringement contentions, to the extent such knowledge is within Zynga's possession, custody, or control." Ex. Q. So I find as a threshold matter that topic 64 covers the subject matter of testimony sought by IBM because of the agreement reached in the parties' correspondence.

That said, looking at pages 285-93 of Mr. Erenturk's deposition transcript, I find that he was able to provide testimony on the topic. On pages 289-90 in particular, Mr. Erenturk testified about why targeted offers were made to users based on user attributes and why that might provide value to the business. That is enough under the circumstances. The circumstances include the fact that the passages cited by IBM are all questions being asked in reference to a particular document, Exhibit 16, that was not mentioned in topic 64 or otherwise called out to Zynga before the deposition.

For these reasons, IBM's motion to compel further deposition testimony on topics 6(c) and 64 is **DENIED**.

**CONCLUSION**

For the reasons stated above, IBM's motion to compel is granted-in-part and denied-in-part as follows:

(1) IBM's motion to compel Zynga to produce notes taken by Zynga's employees during development of the accused Toy Blast and Toon Blast games is **GRANTED-IN-PART** and **DENIED-IN-PART**. Zynga shall search for and produce any notes from Mr. Gezeroghu and Berkay Tarim taken during development of the Toy Blast and Toon Blast games. This production shall occur by January 26, 2024. IBM's motion is otherwise denied.

(2) IBM's motion to compel Zynga to produce load time studies for the accused games is **GRANTED-IN-PART** and **DENIED-IN-PART**. Zynga shall produce the load time documentation referenced on pages 371-72 of the Erenturk deposition transcript to the extent the documents relate to the accused games. This production shall occur by January 26, 2024. IBM's motion is otherwise denied.

(3) IBM's motion to compel Zynga to provide an additional witness on topics 6(c) and 64 of IBM's Rule 30(b)(6) notice is **DENIED.**

I submit this memorandum opinion and order under seal as a precaution because the underlying briefing was marked highly confidential by the parties. Within three (3) business days of this Order, the parties shall jointly email me and advise of any proposed redactions.

IT IS SO ORDERED.

Dated: January 19, 2024
**Public Version filed on January 23, 2024**

Special Master Chad S.C. Stover