IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTERNATIONAL BUSINESS MACHINES CORP., <br><br> Plaintiff, <br><br> v. <br><br> ZYNGA INC., <br><br> Defendant. | Civil Action No. 22-590-GBW |

## **MEMORANDUM ORDER**

Having reviewed the proposed joint pretrial order (D.I. 485) submitted by Plaintiff International Business Machines Corp. ("IBM") and Defendant Zynga Inc. ("Zynga"), **IT IS HEREBY ORDERED** that:

1. IBM's motion *in limine* ("MIL") #1 seeks to preclude Zynga from offering argument, evidence, or testimony regarding the equitable defenses of double patenting, prosecution history estoppel, inequitable conduct, collateral estoppel, prosecution laches, unclean hands, waiver, and equitable estoppel. D.I. 485, Ex. K, IBM's MIL #1. While IBM seeks to prevent Zynga from raising its obviousness-type double patenting ("OTDP") defense during the jury trial, OTDP "is an issue of law premised on underlying factual inquiries." *Allergan USA, Inc. v. MSN Lab'ys Priv. Ltd.*, No. 2024-1061, 2024 WL 3763599, at *4 (Fed. Cir. Aug. 13, 2024). The relevant "factual inquiries" relate to whether the asserted claims are patentably distinct over the reference claims. *Id.* According to IBM, several legal complexities bar Zynga from pursuing an OTDP defense, because "a patent must be earlier-filed to be available as an OTDP reference." D.I. 485, Ex. K,

IBM's MIL #1 at 1-2 (quoting *Acadia Pharms Inc. v. Aurobindo Pharma Ltd.*, No. CV 20-985-GBW, 2023 WL 8803448, at *8 (D. Del. Dec. 13, 2023)); *see also Allergan*, 2024 WL 3763599, at *6-7 (holding that a "first-filed, first-issued, later-expiring claim cannot be invalidated by a later-filed, later-issued, earlier-expiring reference claim."). Yet, IBM's MIL #1 is not a proper vehicle to request resolution of the alleged legal issues with Zynga's OTDP defense. *See* D.I. 485, Ex. K, IBM's MIL #2 at 2 ("[T]he Court should evaluate IBM's conduct within that complex legal framework and reject the defense . . ."). Insofar as IBM maintains that "the asserted claims of the '849 patent are patentably distinct over the reference claims of the '209 patent," this narrow question is a question of fact for the jury to decide, and the Court agrees with Zynga that the jury, at the very least, can issue an advisory verdict that the parties can challenge after trial. *See* D.I.494.

Zynga also contends that certain portions of its equitable defenses may be relevant to issues that the jury will decide, including validity and willfulness. D.I. 485, Ex. K, Zynga's Opposition to IBM's MIL #1, at 2. Zynga contends, for example, that the jury can lawfully consider whether the Patent Office had all the information that was presented to the jury when deciding validity. *Id.* at 3 (citing *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 111 (2011)). Similarly, Zynga contends that evidence of waiver may be relevant to Zynga's willfulness defense, as the period between the failed licensing discussions and the suit purportedly supports Zynga's claim that it does not infringe IBM's patents. D.I. 586, Ex. K, Zynga's Opposition to IBM's MIL #1, at 3. Lastly, Zynga argues that evidence related to collateral estoppel may be relevant to the credibility of IBM's expert witness, given that any contradictions between the expert's trial testimony and the expert's testimony in past cases may reduce his credibility in the eyes of the jury. *Id.* The Court will reserve judgment on these uses of evidence related to equitable defenses, as IBM has not demonstrated that the evidence is substantially more prejudicial than probative. *See* Fed. R. Evid.

2

403. Certain evidence may be relevant to both an equitable defense and an issue for the jury, and the Court will consider usage of such evidence on a case-by-case basis at trial. Thus, IBM's MIL #1 is **DENIED** as to evidence relating to obviousness type double patenting and **DENIED WITHOUT PREJUDICE** as to all other evidence.

2. IBM's MIL #2 seeks to exclude any evidence, testimony, or argument concerning the opinions of other Courts on the Asserted Patents under Rule 403. D.I. 485, Ex. K, IBM's MIL #2. IBM contends that the Court should exclude any evidence concerning prior dispositive decisions, prior *Markman* decisions, and arguments related to those decisions. *Id.* at 1. Courts routinely exclude evidence and argumentation relating to prior litigation because the risk of unfair prejudice substantially outweighs the probative value of any evidence. *See Helios Software, LLC et al. v. SpectorSoftCorp.*, 2015 WL 3653098, at *1 (D. Del. 2015); *Sunoco Partners Marketing & Terminals LP v. Powder Springs Logistics, LLC*, No. 1:17-cv-01390LPS, D.I. 719, at 3 (D. Del. Nov. 10, 2021); *W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*, No. 1:11-cv-00515-LPS-CJB, D.I. 502 at 114:4-11 (D. Del. Dec. 15, 2015). Evidence of a prior summary judgment ruling on unrelated products, for instance, can be highly confusing to the jury and often has very little relevance to the relevant case. Thus, the Court will not permit either party to introduce such evidence to the jury. Zynga also contends that it can rely on the *Markman* orders of other courts to support the plain and ordinary meaning of unconstrued terms. D.I. 485, Ex. K, Zynga's Opposition to IBM's MIL #2, at 2. Yet, the parties cannot argue claim construction to the jury, and Zynga's introduction of constructions made by other courts would be highly confusing and would impede on this Court's obligation to provide the jury with constructions of disputed claim terms. *CtyoLogix Corp. v. Ventana Med. Sys., Inc.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005). Accordingly, the Court will not permit testimony from either expert regarding terms not construed

in this case. Lastly, Zynga seeks to introduce IBM's past statements about the scope of the asserted claims that were made during a *Markman* hearing in a different case. D.I. 485, Zynga's Opposition to IBM's MIL #2, at 2. If Zynga believes that IBM's past statements are relevant to the scope of a claim, however, this is a claim construction argument for the Court, not the jury. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008). Thus, Zynga may not introduce past statements made by IBM during a *Markman* hearing to impeach IBM's counsel at trial. Zynga suggests that IBM should therefore be precluded from referencing a favorable jury verdict. D.I. 485, Ex. K, Zynga's Opposition to IBM's MIL #2, at 1. The Court agrees that references to any prior verdicts should be appropriately limited, but a favorable jury verdict that was shared pre-suit with Zynga may be relevant to willfulness and thus should not be excluded entirely. *Sprint Commc'n Co., L.P. v. Time Warner Cable, Inc.*, 760 F. App'x 977, 980-82 (Fed. Cir. 2019). Thus, IBM's MIL #2 is **GRANTED**, and neither side will be allowed to present collateral orders from other courts.

3. IBM's MIL #3 seeks to exclude any evidence, argument, or reference to comparisons of the accused products to the specification or figures in the asserted patents to argue non-infringement or invalidity. D.I. 485, Ex. K, IBM's MIL #3. Notably, "the only proper comparison is with the claims of the patent." *Zenith Lab'ys, Inc. v. Bristol-Myers Squibb Co.*, 19 F. 3d 1418, 1423 (Fed. Cir. 1994); *see also Zenith Elecs. Corp. v PDI Commc'n Sys., Inc.*, 522 F.3d 1348, 1363 (Fed. Cir. 2008) (similar for invalidity). This means that infringement cannot determined by comparing an accused product "with a preferred embodiment described in the specification." *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985). "Suggesting, incorrectly, that literal infringement can be established by comparing accused products with specification or commercial embodiments would risk unfair prejudice that would substantially

4

outweigh the probative value." *EMC Corp. v. Pure Storage, Inc.*, C.A. No. 13-1985-RGA, 2016 WL 775742, at *4 (D. Del. Feb. 25, 2016).

Zynga identifies two uses of the specification that it wishes to present to the jury. First, Zynga contends that it can use the specification to demonstrate that the Trintex prior art reference was ready for patenting, since portions of Trintex were incorporated into the '849 patent's figures. D.I. 485, Ex. K, Zynga's Response to IBM's MIL #2, at 1. IBM has agreed that it will stipulate that Trintex was ready for patenting more than one year before the '849 patent's priority date. D.I. 485, Ex. K, IBM's Reply for MIL #2, at 1 n. 2. Thus, Zynga does not need to present confusing and prejudicial information to the jury to demonstrate readiness of patenting. Second, Zynga contends that it can compare the specification's illustrations of "offers for sale" to show how a person of ordinary skill in the art would apply the plain and ordinary meaning of the term "advertising" in light of the specification. This argument, however, amounts to improper claim construction and cannot be introduced to the jury. *Amgen Inc. v. Hospira, Inc.*, 2017 WL 11683021, at *1 (D. Del. Sept. 11, 2017) ("Nor are a defendant's experts permitted to support their explanations of plain and ordinary meaning with evidence of the specification and commercial embodiments."). Thus, IBM's MIL #3 is **GRANTED**.

4. Zynga's MIL #1 seeks to exclude argument, evidence, or testimony suggesting that admittedly non-comparable license agreements are probative of the value of the asserted patents. D.I. 485, Ex. L, Zynga's MIL #1. The Court granted a similar motion made by IBM which sought to exclude evidence from Zynga's expert suggesting that admittedly non-comparable licenses were relevant to determining damages. *See* D.I. 501 at 36-37. The Court is thus inclined to grant Zynga's MIL #1 to maintain consistency. IBM contends, however, that the non-comparable licenses are relevant to validity. D.I. 485, Ex. L, IBM's Opposition to Zynga's MIL #1, at 1-2

(citing *Star Sci. Inc. v. R.J. Reynolds Tobacco Co.*, 655 F.3d 1364, 1376 (Fed. Cir. 2011)). The Court agrees that the amount of licenses are relevant as secondary considerations of non-obviousness. IBM also contends that fact witness testimony is necessary to rebut Zynga's damages expert's analysis that there is not a clear relationship between the revenues of Verizon, Netflix, and DirecTV and the amounts of the license agreements. *Id.* at 3. IBM seeks to introduce the non-comparable licenses to establish that there is such a correlation when looking at IBM's broader licensing portfolio. *Id.* Balancing the relevant and permissible uses of the non-comparable licenses raised by IBM against the risk of prejudice, the Court finds that IBM should be precluded from relying on the admittedly non-comparable licenses in its opening and from arguing that those license amounts are relevant to the amount of a reasonable royalty for the asserted patents. Thus, Zynga's MIL #1 is **GRANTED** as to the usage of non-comparable licenses in IBM's opening, and any argument that the license amounts are relevant to the amount of a reasonable royalty for the asserted patents. Zynga's MIL #1 is otherwise **DENIED**.

5. Zynga's MIL #2 seeks to exclude argument, evidence, or testimony noting or implying that Zynga's refusal to settle with IBM is evidence of infringement, willfulness, and/or damages. D.I. 485, Ex. L, Zynga's MIL #2. Zynga contends that this theme is impermissible, as it could confuse and bias the jury. *See generally id.* While the Court agrees that there is at least some danger of prejudice, Zynga's refusal to license the patents-in-suit is highly relevant to both damages and willfulness. Indeed, a reasonable royalty may reflect "the fact that an infringer had to be ordered by a court to pay damages, rather than agreeing to a reasonable royalty." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010). Thus, the jury can be informed that, while other companies willingly agreed to take licenses for the patents, Zynga has not agreed to do so. Similarly, the fact that other companies took licenses, and Zynga's awareness of this fact, is

probative of willfulness and validity. *See Sprint*, 760 F. App'x 977 at 980-82. While IBM will not be allowed to use the fact that Zynga has not settled in an impermissible way (e.g. to suggest infringement or to imply that the jury should punish Zynga), the simple fact that Zynga refused to enter a license has some relevance and is not unduly prejudicial. Thus, Zynga's MIL #2 is **DENIED** with the caveat that IBM's use of the fact that Zynga refused to enter a license shall be limited and IBM will not be allowed to use that fact to suggest or imply infringement and/or that the jury should punish Zynga.

6. Zynga's MIL #3 seeks to exclude argument, evidence, or testimony regarding post-grant Patent Office Proceedings. D.I. 485, Ex. L, Zynga's MIL #3. IBM notes that it intends to show the jury that decisions in post-grant proceedings bolster the validity of the '849 patent, by alleging that the patent has been battle-tested. *See* D.I. 485, Ex. L, IBM's Opposition to Zynga's MIL #3. Yet, "[f]ailure to institute an IPR has little or no probative value, and, to the extent there is any probative value, it is greatly outweighed by the risk of jury confusion and the time it would take to put the failure to institute in an appropriate context." *Nox Med. Ehf v. Natus Neurology Inc.*, No. CV 15-709-RGA, 2018 WL 6629704, at *1 (D. Del. Apr. 12, 2018) (citing Fed. R. Evid. 403). Moreover, post-grant proceedings are "reached on a record that was less than complete and without the benefit of a full adversarial proceeding." *ART+COM Innnovationpool GmbH v. Google Inc.*, No. 1:14-217-TBD, 2016 WL 11531119, at *2 (D. Del May 16, 2016). Zynga was not a party to these post-grant proceedings, further cutting against relevance. *See id.* IBM maintains, however, that the post-grant proceedings are relevant to willfulness. D.I. 485, Ex. L, IBM's Opposition to Zynga's MIL #3. Yet, IBM has provided no evidence that Zynga was aware of the post-grant proceedings, which would be necessary to support any such finding. Thus, the Court will generally exclude evidence of post-grant proceedings. Zynga may, however, assert prior art that has

previously been introduced at the Patent Office. Because overlap in prior art references "provides a legally meaningful basis for the jury to weigh against" an invalidity case, there is special relevance for the introduction of post-grant proceedings if Zynga introduces prior art that has previously been introduced at the Patent Office. *Willis Elec. Co., Ltd. v. Polygroup Ltd.*, C.A. No. 15-cv-3443, 2024 WL 118443, at *9-11 (D. Minn. Jan. 9, 2024). Moreover, a jury may be confused and believe that the Patent Office did not have that prior art before it. Thus, if Zynga opens the door by introducing prior art raised before the Patent Office, IBM may respond by introducing evidence related to the post-grant proceedings. Therefore, Zynga's MIL #3 is **GRANTED-IN-PART** and **DENIED-IN-PART**.

Date: August 29, 2024

_____
GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE