

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INTERNATIONAL BUSINESS MACHINES CORPORATION,<br><br>            Plaintiff,<br><br>    v.<br><br>ZYNGA INC.,<br><br>            Defendant. | C.A. No. 22-cv-590-GBW |

## **DEFENDANT'S LETTER REGARDING CLAIM CONSTRUCTION PURSUANT TO O2 MICRO**

Dated: September 2, 2024

Alyssa Caridis (admitted *pro hac vice*)
Jake O'Neal (admitted *pro hac vice*)
Orrick, Herrington & Sutcliffe LLP
777 South Figueroa Street Suite 3200
Los Angeles, CA 90017
(213) 629-2020
acaridis@orrick.com
jake.oneal@orrick.com

Clement S. Roberts (admitted *pro hac vice*)
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
(415) 773-5700
croberts@orrick.com

Brian E. Farnan (Bar. No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301 (Fax)
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Evan D. Brewer (admitted *pro hac vice*)
Orrick, Herrington & Sutcliffe LLP
1000 Marsh Road
Menlo Park, CA 94025
(650) 614-7343
ebrewer@orrick.com

Richard F. Martinelli (admitted *pro hac vice*)
Orrick, Herrington & Sutcliffe LLP
51 West 52nd Street
New York, New York 10019
(212) 506-5000
rmartinelli@orrick.com

*Attorneys for Defendant Zynga Inc.*

Dear Judge Williams:

Zynga has not previously requested any of the constructions presented in this letter, the need for these constructions arises from the Court's recent orders and, because the meaning of the terms is disputed, this Court must resolve the dispute pursuant to *O2 Micro*.[1]

| Term | Zynga's Proposed Construction |
|---|---|
| View-generating logic (U.S. Patent No. 7,702,719, claim 1) (additional language underlined) | Program code that generates a screen or window representation of a subset of the model that the application chooses to display. <u>View-generating logic does not create new data (unlike controller logic) but merely reformats data for display.</u> |
| Selectively supplied (U.S. Patent No. 7,072,849, claim 8) | The phrase "selectively supplied to and retrieved at the reception systems for presentation to the respective users in accordance with the characterizations established for the respective reception system users" has its plain and ordinary meaning, which is the ads are supplied in accordance with the characterizations established for the respective reception system users. |
| Each term the court has construed in the '849 patent and that appears in the claims of the U.S. Patent No. 7,047,209. | The same construction the Court has adopted for the same claim term in the '849 patent. |
| Additional information ('209 patent, all claims) | Plain and ordinary meaning. "Additional information" can include advertising. |

**'719 patent (claim 1): View-generating logic.** In its *Daubert* motion, IBM asked the Court to exclude Dr. Bennett's invalidity opinion on the grounds that it was inconsistent with the Court's construction. D.I. 322 at 15-19. Among other things, IBM took issue with the fact that part of Dr. Bennett's invalidity opinion applied the Court's construction to include "a server sending data to a client that causes the client to change what is displayed on its screen." *Id*. at 16 n.6. The Court found that Dr. Bennett's opinion on this point was not in accordance with the Court's construction because "View-generating logic does not create new data (unlike controller logic) but merely reformats data for display." D.I. 501 at 38. Because, in response to IBM's request, the Court has further explained the meaning of its construction as part of excluding Dr. Bennett's opinion, it should add that clarification to its claim construction. Put differently, if part of the *reason* Dr. Bennett's invalidity opinion is in error is because "[v]iew-generating logic does not create new data … but merely reformats data for display," then Zynga should be allowed to argue that IBM's infringement position is in error insofar as it violates that same principle.

**'849 patent (claim 8): Selectively supplied.** The Court recently held that experts cannot use the specification to explain how a POSITA would understand the plain and ordinary meaning

---

[1] IBM suggests that it may seek a construction of "characteristics" in the '209 patent. IBM should file its own letter brief on that issue today. If it does not, and Zynga first learns the basis for IBM's argument on Tuesday, Zynga intends to seek leave to file a 1-page reply on that issue only.

of unconstrued claim terms.  However, the Federal Circuit has explained that "the ordinary and customary" meaning of a claim term must be judged from the perspective of a POSITA and that, "[i]mportantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). For this reason, both parties' experts relied on the specification and prosecution history in assessing the plain and ordinary meaning of unconstrued claim terms.  Because, under the Court's ruling, the only way for the jury's decision to take this required contextual element into account is through formal claim construction, Zynga must ask the court to construe additional terms.

Claim 8(c) requires "structuring advertising so that it may be selectively supplied to and retrieved at the reception systems for presentation to the respective users in accordance with the characterizations established for the respective reception system users." The parties dispute whether advertising must be "selectively supplied … in accordance with the characterizations established for the respective reception system users." Zynga contends that is the plain and ordinary meaning of the term in light of the specification and prosecution history, while one of IBM's experts contends (also citing to the specification) that "supplying" counts as "selective" even if all ads are supplied to all users—so long as the ads are not all supplied at once.

The first clause in the claim limitation says that the ads must be selectively supplied.  The rest of the limitation explains where the ads are supplied to ("reception systems"), the purpose for which they are supplied ("for presentation to the respective users"), and the basis for the selection ("*in accordance with the characterizations established for the respective reception system users*"). The claim goes on to say that those "characterizations" are "based on the compiled data" "concerning" specific users, as provided by limitations 8(a) and 8(b).

This plain meaning—that ads are selectively supplied to the user device based on user characterizations—is illustrated by the specification.  As the abstract notes, "the method features steps for *individualizing* the advertising *supplied* to enhance potential user interest by *providing advertising based on a characterization of the user*." '849 patent, Abstract.[2] *See, e.g., Tippmann Eng'g, LLC v. Innovative Refrigeration Sys., Inc.*, No. 2022-1318, 2023 WL 18559, at *4 (Fed. Cir. Jan. 3, 2023) ("We have frequently looked to the abstract to determine the scope of the invention" (quoting *Hill-Rom Co. v. Kinetic Concepts, Inc.*, 209 F.3d 1337, 1341 n.* (Fed. Cir. 2000))). The Background of the Invention – Field of Use, Summary of Invention, and Preferred Embodiment contain materially identical language. '849 patent at 1:25-32, 3:25-30, 10:19-23.

The prosecution history confirms Zynga's construction.  During prosecution, IBM explained that "[t]he claimed improvement" of the invention "relates to the manner in which advertising may be selectively supplied" to users' "terminals." Ex. 2 (2/25/05 Reply Br.) at 1. Specifically, "[t]he disclosure describes how *information about the particular users* … may be used to select advertising to be *supplied* to each particular user." *Id*.  "Lists are created *for each user*, identifying the advertising to be supplied to the user's terminal." *Id*.  IBM explained that "[a] suitable adverb to describe the 'selective supply' of advertising is a *customized* PUSH.  In other words the advertising is PUSHed to a specific user." *Id.* at 1-2.  IBM further relied on this feature of the claimed invention to distinguish prior art, arguing that Alber targeted ads by sending

---

[2] Emphasis added in this quote and throughout the following paragraphs.

the same ad to all users based on "demographic information" about the user base "whereas ***the claim requires*** the advertising to be supplied to 'respective reception system users' based on characterization for the 'respective reception system users.'" *Id.* at 6. And IBM argued that the phrase "in accordance with the characterizations established for the respective … users" modifies "selectively supplied to and retrieved." Ex. 3 (4/29/02 Request for Rehearing at 22). These statements demonstrate "how the inventor understood the invention" and "clarify[] the scope of" the limitation. *See Sequoia Tech., LLC v. Dell, Inc.*, 66 F.4th 1317, 1327 (Fed. Cir. 2023).

One of IBM's technical experts, Dr. Scott Martin, agrees that ads are "selectively supplied" in claim 8 "in accordance with the characterizations established for" users. In particular, Dr. Martin testified that, in claim 8, "[y]ou're selectively ***supplying based on the characterization***— the attributes and the data that you've collected about that user." Ex. 4 at 80:24-81:3; *see also id.* at 81:10-14 (agreeing that "advertising is targeted by the method of Claim 8 because different users receive different ads based on their characterizations"). In sum, the claim language, specification, IBM's expert, and IBM's statements all agree: "[S]electively supplied" ads are ads that are supplied to specific users "in accordance with the characterizations."

**'209 patent (all claims): Every previously construed claim term.** For the same reasons discussed above, Zynga asks the Court to explain to the jury that, because they share the same specification and file history, a POSITA would understand the terms of the '209 patent to have the same meaning as the common terms of the '849 patent. It cannot be reasonably disputed that terms that appear in both the '849 patent and the '209 patent should be given the same construction. The '209 patent is a direct continuation of the '849 patent; it has the same title, specification, figures, and familial prosecution history. And IBM has not identified any common terms that should be construed differently. *Aventis Pharms. Inc. v. Amino Chems. Ltd.*, 715 F.3d 1363, 1380 (Fed. Cir. 2013) ("[W]e presume, unless otherwise compelled, that the same claim term in the same patent or related patents carries the same construed meaning." (citation omitted)). Because this is no longer something the experts can explain to the jury, the Court should do so.

**'209 patent (all claims): Additional information.** For the same reasons, the Court should construe "additional information" in the claims of the '209 patent to have its plain and ordinary meaning, which includes "advertising." Claim 1 of the '209 patent largely mirrors claim 8 of the '849 patent but uses the term "additional information" rather than "advertising" throughout the claimed method. *Compare* Ex. 1, claim 1 *with* D.I. 1-1, claim 8. During prosecution of the '209 patent, the patentee repeatedly explained that "additional information" is, or at least includes, "advertising." *See* Ex. 5 (10/1/04 Appeal Brief) at 4 ("In a preferred embodiment, which is described in detail, [the recited] *additional information is advertising*."), 21 ("[T]he specification in this application reveals that the structure of *advertising, or the additional information*, is described in detail. . . ."); *see also* Ex. 6 (4/16/04 Amendment) at 10 ("That material could be characterized as including user applications as well as *advertising (which could be considered 'additional information'*).")., 11 (". . . additional information (advertising) . . ."), 14 ("In one example in the specification the 'additional information' is advertising . . . ."), 24 (". . . 'additional information' (advertising). . .").

IBM may rely on a statement the BPAI made during prosecution to dispute Zynga's construction. But the *next* sentence of the order mentions "an additional information portion (***e.g. advertising***)," confirming Zynga's construction is correct. *See* Ex. 7 (12/29/05 BPAI Order) at 7.

3

        Respectfully submitted,

        /s/ Michael J. Farnan

        Michael J. Farnan

cc: Counsel of Record (via E-mail)